# Wytheville.

W. C. Gloth v. Marjorie Gloth and Citizens National Bank of Alexandria.

June 12, 1930.

Absent, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*John S. Barbour* and *H. W. Dudley*, for the appellant.

*Wendenburg & Haddon* and *Harry R. Thomas*, for the appellees.

Epes, J., delivered the opinion of the court.

This is an appeal by W. C. Gloth from a decree entered July 28, 1928, by the Circuit Court of Arlington county sustaining the demurrer of Marjorie Gloth to a bill in chancery filed May 22, 1928, by W. C. Gloth

against Marjorie Gloth and the Citizens National Bank of Alexandria, and dismissing the bill.

This suit is an aftermath of a former suit for divorce *a mensa et thoro* brought by Marjorie Gloth against William C. Gloth.

On June 24, 1926, Marjorie Gloth filed her bill in the Circuit Court of Arlington county for a divorce *a mensa et thoro* from her husband, W. C. Gloth, the appellent here. The sole ground for divorce alleged in said bill was that the said W. C. Gloth had deserted and abandoned his said wife, which desertion is alleged to have taken place on the 27th day of September, 1925, and to have continued ever since.

The bill prayed that the care and custody of their only child, a son, William C. Gloth, Jr., who was born September 6, 1913, be awarded to Marjorie Gloth, and "that the court enter a decree settling the property rights of the parties," and for further and general relief. But the bill does not pray for alimony, except in so far as it may be deemed to be prayed for in the prayers above mentioned.

On June 25, 1926, William C. Gloth filed his answer to this bill neither admitting nor denying the allegation that he had deserted his wife, but calling "for strict proof of such allegations as may be material." His defense was apparently limited to the filing of said answer.

During the pendency of this suit a contract was entered into between William C. Cloth and Marjorie Gloth, the material parts of which, separated by us for reference into numbered paragraphs, are as follows:

(1) "This contract and property settlement, made * * * this the 2nd day of June, 1926, by and between William C. Gloth, party of the first part, and Marjorie Schneider Gloth, his wife, party of the second part, witnesseth:

(2) "That, whereas, the parties hereto by reason of unhappy differences are now separated, and the party of the second part having filed suit against the party of the first part in the Circuit Court for Arlington county, Virginia, for a divorce on the grounds of desertion, it is desired to make a property settlement between the parties; and

(3) "Whereas, the party of the second part has agreed to accept this settlement, and the provisions for her hereinafter made, in lieu of dower and of her distributive share in the estate of the party of the first part, and in lieu of alimony; and

"Whereas, it is the desire of the party of the first part, in view of this settlement, to release all right of curtesy and of distribution in the estate of the party of the second part;

(4) "Now, therefore, for and in consideration of the premises and of the acceptance of this settlement by the party of the second part, the party of the first part does hereby agree to pay to the party of the second part on Monday of each week, beginning May 16, 1926, the sum of forty dollars ($40.00) per week, until Monday, June 28, 1926, from and after which time he will pay to the party of the second part the sum of fifty dollars ($50.00) per week, for the maintainance and support of herself and of the infant child of the said parties, which payment is to be in full and in lieu of all allowances for clothing and other necessaries for herself and the son of said parties, except that the party of the first part, in addition thereto, in the event of unusual or protracted illness, entailing operations, hospital expenses or professional nursing, either for the party of the second part or for the son of the said parties, agrees to pay any and all such expenses when notified that the same are necessary.

(5) "And the party of the first part, in order to secure the payment of the said sum of fifty dollars ($50.00) per week as aforesaid, does hereby agree that he will * * * * assign and transfer to the Citizens National Bank of Alexandria, Virginia" (certain stocks and bonds which the appellant alleges to be worth in excess of $10,000.00), "upon the following trust, to-wit, to be held by the said Citizens National Bank of Alexandria, Virginia, * * * until there shall be default by the said party of the first part in the prompt and regular payment of the said sum of fifty dollars ($50.00) per week when and as the same shall become due and payable, in which event to sell, as from time to time may be necessary, such part or parts of the property so held in trust by it, as it may in its discretion deem best, and to pay the proceeds thereof to the party of the second part to the extent of any arrears * * *.

(6) "The instrument creating said trust shall further provide" * * * * * * * * * * * * "that in the event that any of the property held in trust should depreciate in value, or the amount or value of the property held in trust be reduced by any sale under the provisions of the trust, the party of the first part will deposit, assign, transfer, or convey to the trustee additional property sufficient to make up any depreciation, loss, or reduction.

(7) "It is understood that in the pending divorce proceedings the court shall be asked to ratify and confirm this property settlement in its entirety, and to direct the payment of the said sum of fifty dollars ($50.00) per week by the party of the first part to the party of the second part, and that nothing herein contained, or contained in the instrument creating the trust herein provided for, shall affect the right, or be taken in lieu of the right of the party of the second part,

to seek the aid of the court to enforce said payments should the same be in arrears, or to seek the aid of the court in enforcing any of the provisions of said trust if and when necessary.

(8) "And the party of the first part further agrees as a part of this settlement that he will convey to the party of the second part" (certain described real estate); * * * "and that he will convey to the contracting purchaser title to what is known as the Johnson Hill property in Arlington county, Virginia, upon demand being made upon him by the party of the second part and without further consideration to him, the party of the first part.

(9) "And the party of the first part further agrees that he will as of the date of this settlement, execute as a part of this settlement, and in consideration thereof, a will by the terms of which he will bequeath and devise to the party of the second part one-third of all of his estate of whatsoever kind, character, or description, whether in law or in equity, except, however, his interest in the home place located at or near Erie, in the State of Pennsylvania, to be hers absolutely and without reservation or restriction of any kind; and he further agrees as a part of this settlement and in consideration hereof that he will not make any other or future will without bequeathing and devising to the party of the second part one-third of all his estate as aforesaid with the exception of his interest in the Pennsylvania property, unless the party of the second part remarries, in which event the party of the first part shall have the right to devise and bequeath his property as he sees fit. It is understood and agreed that should the party of the first part make any other or future will, the party of the second part at the time not having remarried, without bequeathing and devising to the party of the second

part one-third of his estate as aforesaid, that the party of the second part shall at once be entitled to have absolutely, and without reservation or restriction, one-third of the estate of the party of the first part, of whatsoever kind, character, or description, whether in law or in equity, and to have the same effectually assigned, transferred, and conveyed to her by the party of the first part, and to sue for and to recover the same of him in the event of his refusal or failure to forthwith assign, transfer, convey and deliver the same to her. * *

(10) "The party of the first part agrees to relinquish and does hereby relinquish any and all right of curtesy in and to the real estate of the party of the second part, now owned by her or hereafter to be acquired, or to be conveyed to her under this agreement, and further relinquishes any right to share as a distributee in her estate; and the party of the second part in consideration of this settlement and the provisions hereinbefore made for her, does hereby agree to accept the same in lieu of any dower right in the real estate of the party of the first part now owned by him or hereafter to be acquired, and in consideration of the making and execution of the will aforesaid, she further agrees to and does hereby relinquish any right to a distributive share in the estate of the said party of the first part.

(11) "For the purpose of carrying out and making effective this agreement, each party agrees that they will, when requested by the other, join in and execute such conveyances as may be necessary to permit the other to deal with his or her real property free from all right of the other to curtesy or dower, as contemplated by this agreement.

(12) "The party of the first part further agrees to pay the following bill contracted by the party of the

second part and now outstanding, to-wit, * * * "
(certain bills listed aggregating a total of $504.20).

"And the party of the second part agrees that she will not contract any obligations or debts whatsoever upon the credit of the party of the first part other than may be properly contracted in the case of illness or operations under the terms of this agreement.

(13) "It is mutually agreed and understood that in the event the party of the second part remarries, then the party of the first part shall be relieved from the payment of the weekly sums to the party of the second part as herein provided for, and shall be liable only for the support of the infant son of the parties.

(14) "The party of the first part further agrees that at the completion of the high school education of the son of the said parties, he, the party of the first part, will defray all expenses of and to complete his education in such institution or institutions as the party of the first part, the party of the second part, and their said son shall select, and further that he will annually defray the expenses of a vacation for the said son to the extent of one hundred dollars ($100.00) and railroad, or other transportation—the said party of the first part to be consulted as to the time and place of said vacation."

Said contract is signed and sealed by William C. Gloth and Marjorie Schneider Gloth.

By deed of trust dated July 2, 1926, between William C. Gloth, party of the first part, Citizens National Bank of Alexandria, party of the second part, and Marjorie Gloth, party of the third part, William C. Gloth, after reciting said contract above set forth in pursuance thereof, assigned and transferred to said bank, as trustee, all the stocks and bonds which he had in said contract agreed to transfer and assign to it, said

transfer and assignment being for the purposes and upon the trusts in said contract above set forth.

In addition, said deed of trust, which is signed and sealed by William C. Gloth and Marjorie Gloth, contains the following provisions:

"It is further understood and agreed that should the party of the third part remarry that this trust shall become null and void and of no effect, and the property held hereunder shall be reassigned, transferred, and delivered to the party of the first part hereto free and discharged from the terms and provisions hereof. In the event of the death of the party of the first part during the existence of this trust, the party of the third part shall have the right to elect to take one-third of the estate of the party of the first part bequeathed and devised to her by the will contracted to be made by the party of the first part in the contract and property settlement entered into by the said parties of the even date herewith, bequeathing and devising to her one-third of his whole estate, excepting certain property in Pennsylvania, or in lieu thereof to have assigned, transferred, and delivered to her by the trustee herein the property held under this trust to be hers absolutely and without reservation or restriction of any kind whatsoever."

On July 7, 1926, said court entered its decree in said suit of Marjorie Gloth against William C. Gloth by which it adjudged that William C. Gloth had "wilfully deserted and abondoned the plaintiff without just cause or excuse;" and granted a divorce *amensa et thoro* to Marjorie Gloth.

This decree also contains the following provisions which we have divided into letter paragraphs, for reference purposes:

(a) "And it appearing to the court that the parties

plaintiff and defendant have heretofore, and since the institution of this suit, to-wit, on the 2nd day of July, 1926, entered into an agreement for a weekly allowance from the defendant to the plaintiff for the support of herself and the infant son of the said parties, and for the settlement of their property rights, and in lieu of the respective rights of the parties plaintiff and defendant to dower and curtesy and to share in the distribution of the estate of the other,. and it appearing further that they have jointly executed, as provided for in the said property settlement contract, a deed of trust conveying certain property to the Citizens National Bank of Alexandria, Virginia, for the purposes set forth in said agreement and property settlement (copies of which property settlement contract and deed of trust have been filed in this cause as exhibits "A" and "B," respectively, with the deposition of the plaintiff);"

(b) "It is hereby adjudged, ordered and decreed that the same in its entirety be, and it is hereby ratified and confirmed and adopted as and made a part of this decree as fully as if written out and incorporated herein; and it is further adjudged, ordered and decreed that the defendant pay to the plaintiff the weekly sum of forty dollars per week beginning May 16, 1926, and fifty dollars per week from and after June 28, 1926, as provided for therein, and that he convey to her the property contracted therein to be conveyed to her, and that he carry out and perform all further and other provisions and conditions of said contract and property settlement." .

(c) "And it is further adjudged, ordered and decreed that the marital rights of each party to this suit in and to any property owned by the other party be, and the same are hereby, extinguished, and that the parties plaintiff and defendant have, hold and enjoy their real and personal property now owned by them or hereafter

acquired, free from any and all claim of dower, curtesy and distribution, or any other right of either party in or to the property of the other except as set forth and provided for in the contract and deed of trust aforesaid."

(d) " * * * and it is further ordered that this cause be removed to the stet docket, but leave is reserved to the parties, or either of them, to make application to this court for such further orders as are authorized by law."

On May 22, 1928, William C. Gloth filed his bill in chancery in the Circuit Court of Arlington county against Marjorie Gloth and Citizens National Bank of Alexandria, in which he asked that the said divorce suit of *Marjorie Schneider Gloth* v. *William C. Gloth* be restored to the active docket of the court, and that the bill be treated as a petition and cross bill in said suit.

After having set forth in his bill the proceedings had and the said decree entered in said suit of *Marjorie Gloth* v. *William C. Gloth*, and said contract and deed of trust, the allegations of the bill summarized as briefly as is practical, are as follows:

(1) The execution and delivery of said deed and deed of trust by him and his consent to the incorporation of the provisions thereof in said decree were procured by coercion, fraud, and duress on the part of Marjorie Gloth. The facts alleged to constitute the said fraud, coercion, and duress are set forth in detail, and will be hereinafter more fully stated.

(2) The consideration for the execution of said deed and deed of trust "outside and beyond the consideration arising from the coercion and duress of" Marjorie S. Gloth, which considerations are set forth in detail, have wholly failed. These allegations will be more fully stated later.

(3) Marjorie Gloth, his divorced wife, has repeatedly, since February 1, 1928, been guilty of adultery with one James Jarrett, and was on March 7, 1928, caught in the act with her said paramour in a public park in the city of Washington, D. C. She goes about in public with her said paramour, and on several occasions has had him to spend days and nights in her home in Arlington county to her shame and ill fame and that of their son, William C. Gloth, Jr.

(4) When he (William C. Gloth), after having been advised of her adultery, went to her residence on May 7, 1928, to advise her that because of her adultery and the shame she had brought upon their child, William C. Gloth Jr., he would cease paying her the installments of alimony provided for in said contract and decree, she maliciously and wantonly shot him through the chest with a pistol, from which wound he came near to dying, for which she has been indicted for felony by the grand jury of Arlington county.

(5) "None of the funds and property received under the said agreement of June 2, 1926 * * * by Marjorie Schneider Gloth, and * * no property then and now owned by the complainant (William C. Gloth) was derived from his said wife or was the result of her labors or the joint labors and economies and accumulations of his said wife and himself, but were all the result of his own unaided labors and toil; and that the only means of income available to your complainant or for the payment of the alimony accrued or to accrue are those which he earns at the practice of his profession, and owing to the campaign of detraction which the said wife has subjected him to during the past two years and more, and the time lost from his profession by reason of her deadly assault above mentioned on him, his capacity to earn a proper support has been impaired

and his income at present is not sufficient to enable him to meet the said payments without greatly embarrassing him and sacrificing his savings.

(6) "By reason of the facts aforesaid, and also by reason of the fact that the provision of said decree" seeking to annul the marital rights of the complainant and his wife each in the property of the other, such as curtesy, dower, and distributive rights are null and void because at the time said decree was entered by reason of the amendment of section 5111 of the Code of Virginia in 1926, "the court was without power either to enter or enforce said decree in those particulars," the court should annul said contract and the provisions of said decree of July 7, 1926, in so far as they require William C. Gloth to make said weekly payments and also in so far as they limit "his right and power to make such disposition of his property by deed or will as he wishes."

(7) By reason of said misconduct of his wife, William C. Gloth has not since the _____day of _____, 1928, made any payments of the weekly installments of alimony to Marjorie Gloth as he agreed to do in said contract and was ordered to do so in said decree.

(8) There is, by reason of said things, a *bona fide* dispute between him and the said Marjorie Gloth with reference to their respective rights under said contract, and deed of trust, and said decree, and that he is, therefore, entitled under section 6140, sub-sections "a" to "h" of the Virginia Code of 1924, Annotated, to have the court ascertain and declare the respective rights, duties and privileges of parties hereunder.

(9) The Citizens National Bank of Alexandria has notified William C. Gloth that it intends to proceed to make sale of the stocks and bonds transferred to it by him by said deed of trust, and pay therefrom the in-

stallments of alimony which he has not paid; which if it is permitted to do will do him irreparable damage and injury.

The specific prayers for relief contained in the bill, arranged in somewhat different order than in the bill set forth, are as follows:

(1) "That the complainant be granted a divorce *a vinculo* from Marjorie Gloth.

(2) "That the decree of July 7, 1926, requiring William C. Gloth to pay to Marjorie Gloth alimony, be annulled in so far as it requires him to pay her alimony after March 7, 1928.

(3) "That the court adjudge Marjorie Gloth an improper person to have custody of their son, William C. Gloth, Jr., and award the custody of him to the complainant, his father.

(4) "That the rights of this complaint under the said contract and deed of June 2, 1926, and the decree of this court in respect thereto under the facts as they are alleged and shall be developed in this case be ascertained and declared by order of this court and especially that it be ascertained and declared that he has the right to make such disposition of his property by deed or by will as he may wish.

(5) "That the trusts created under said contract of June 2, 1926, and the deed of the same day to the Citizens National Bank of Alexandria, Virginia, trustee, be declared terminated and the said Citizens National Bank be directed to return to the complainant the *corpus* of the fund in its hands hereunder.

(6) "That the said Marjorie Gloth be required to account for all property heretobefore received by her under said agreement and not used by her in the support and maintenance of herself or the support and

education of her said son prior to the 7th day of March, 1928; and to restore any residue not so expended to the complainant.

(7) "That pending the determination of this suit, the Citizens National Bank of Alexandria and Marjorie Gloth be enjoined and restrained from disposing of any of the property held by said bank under said deed of trust."

The bill also prays that "other relief, general and special, be granted."

The Citizens National Bank of Alexandria did not demur, plead or answer said bill; but Marjorie Gloth filed her demurrer to said bill assigning twelve grounds of demurrer. The grounds of demurrer relied upon by her, abbreviated to eliminate duplications and somewhat restated in the light of the argument of her counsel, are as follows:

(1) The desertion of Marjorie Gloth by William C. Gloth on the ground she has been granted a divorce *a mensa et thoro* from him by said decree of July 7, 1926, is a bar to a suit by William C. Gloth against her for a divorce *a vinculo* on the ground of the adultery alleged to have been by her subsequently committed.

(2) Even if the provisions of said decree of July 7, 1926, with reference to payments to be made by William C. Gloth to Marjorie Gloth be an award of alimony, and not a decree for provisions in lieu of alimony, said decree is final and *res adjudicata* with reference to alimony; and the court now has no power or jurisdiction to revoke, modify, or change the provisions thereof with reference to alimony.

(3) The decree of July 7, 1926, is not a decree for alimony; but it is a decree confirming, in lieu of alimony, a contract for certain weekly payments to be made to Marjorie Gloth and a property settlement between them, voluntarily entered into between William C.

Gloth and Marjorie Gloth, and a deed of trust executed in pursuance of said contract and property settlement to secure the performance of the terms thereof by William C. Gloth; and in so far as the decree confirms said "contract and property settlement" and deed of trust it is *res adjudicata*, and the court is now without power or jurisdiction to change, modify, or annul the provisions of said contract or deed of trust or of said decree because of any subsequent events.

(4) The reasons and conditions for the execution of said contract and trust deed, set forth in said injunction bill, but not embraced in said contract' and trust deed, are no part thereof, and cannot become a part thereof without violating the rule that no written instrument can be varied, altered or added to by parcel evidence.

(5) The said William C. Gloth has been guilty of laches in bringing this suit to set aside and annul said contract and deed of trust, and the *status quo* existing at the time of the execution of the contract and deed of trust has changed and can never be restored.

(6) The bill on its face shows "that the said William C. Gloth is $800.00 in arrears in the payments of alimony provided for in said property settlement, confirmed by the decree in the said suit of *Marjorie Schneider Gloth* v. *William C. Gloth*, and hence is in contempt of court," and therefore should not be permitted to maintain this suit.

(7) "Inasmuch as said bill for injunction has been filed and treated as a petition and cross-bill in said divorce suit of *Marjorie Schneider Gloth* v. *William C. Gloth*," * * * * "the court is without jurisdiction to determine in this divorce suit the matters set forth in said injunction bill, or to grant the relief therein prayed for."

(8) The bill in this suit asks a construction of said contract and deed of trust, thus recognizing the validity thereof, and also, asks that the enforcement of said contract and deed of trust be enjoined, which prayers are repugnant.

(9) As said bill, by asking a construction of said contract and deed of trust, recognizes the validity thereof, the prayer for injunction is in violation of section 6140f, Code of Virginia 1924, Annotated, which provides: "The mere pendency of any action or suit brought merely to obtain a declaration of rights or a determination of a question of construction shall not be sufficient grounds for the granting of any injunction."

A preliminary injunction was awarded as prayed for, and later the cause came on to be heard on said bill filed by William C. Gloth and the demurrer thereto. Upon which hearing the court sustained the demurrer and dismissed said bill, but provided in said decree "nothing herein contained shall be construed as passing on the question of the custody of the infant son, William C. Gloth, Jr., or as in any way ruling that the court cannot make any further order in respect thereto which may appear proper to the court in the proper proceedings."

The first question with which we are met is this: Does the decree of the Circuit Court of Arlington county granting to Marjorie Gloth a divorce *a mensa et thoro* from William C. Gloth on the grounds of his desertion of her, bar this suit now brought by William C. Gloth against Marjorie Gloth for a divorce *a vinculo* on the grounds of adultery committed since the entry of said decree?

Said decree is *res adjudicata* of the fact of such desertion; and on the authority of *Kirn* v. *Kirn*, 138 Va. 132, 120 S. E. 850 (the first and only prior case in-

volving the defense of recrimination to come before this court), such desertion is a bar to this suit for divorce *a vinculo*. If the desertion of the husband is a bar to a suit for divorce *a vinculo* brought by the husband on the ground of the adultery of the wife committed after the institution of and during the pendency of a suit for divorce *a mensa et thoro* brought by the wife on the ground of such desertion (which were the facts in *Kirn* v. *Kirn, supra*), then, on principle, it must follow that a decree judicially establishing the desertion and granting to the wife a divorce *a mensa et thoro* on the grounds of desertion is a bar to a suit for divorce *a vinculo* brought by the husband for adultery committed after the entry of the decree *a mensa et thoro*.

The next question is this: When alimony is awarded to a wife in a decree granting to her a divorce *a mensa et thoro* from her husband, may the amount thereof be thereafter changed or modified by the court to meet changed conditions of the parties subsequently arising, or the decree, in so far as it provides for future payments of alimony, be revoked because of the adultery or other misconduct of the wife committed after the entry of said decree?

This question, we think, must be answered in the affirmative.

*Brinn* v. *Brinn*, 147 Va. 277, 137 S. E. 503, 506, is the first and only case which has come before this court involving the question of the power of a court to change or modify the provisions for alimony contained in a decree for divorce in order to meet changes in conditions of the parties arising subsequent to the entry of the decree. In that case, in which the divorce granted was a divorce *a vinculo*, this court, in an opinion delivered by Burks, J., held, largely upon the authority of *Ruge* v. *Ruge*, 97 Wash. 51, 165 Pac. 1063, L. R. A. 1917F, 721,

and the cases from other jurisdictions therein cited, that when a suit for divorce has terminated in a decree granting a divorce *a vinculo* and awarding alimony, though payable in future installments, if there are no minor children whose care, custody and maintenance are to be provided for, the Virginia statute (section 5111, Code 1919 hereafter quoted) confers no power upon the court thereafter to change or modify the provisions of the decree as to alimony to meet the changed conditions of the parties, nor has the court such power by virtue of the common law; and unless the court in the decree granting a divorce *a vinculo* and awarding alimony reserve the power to thereafter change or modify the provisions in the decree as to alimony, it has no power to either abrogate the award or modify its terms.

The appellee contends that this same rule is applicable also to a case in which alimony has been awarded in a decree granting a divorce *a mensa et thoro*.

In *Brinn* v. *Brinn, supra*, in upholding the inherent right of the court to reserve to itself, by an express reservation in the decree awarding alimony, a continuing jurisdiction to change or modify the decree, in so far as it relates to alimony, to meet the changed condition of the parties subsequently arising, the court aptly said: "The propriety of making such a reservation is so manifest, in order to meet the changed condition of the parties and to attain the ends of justice, and it is so consonant with the practice in other cases in chancery, that we are satisfied that the right to make such a reservation is inherent in courts of chancery."

The propriety of the court having such continuing jurisdiction even in suits for divorce *a vinculo* is so manifest that the rule applied in *Brinn* v. *Brinn* ought not to be extended to cases of divorce *a mensa et thoro* unless it be very clear that the law as it exists makes mandatory its application.

Prior to 1857 the ecclesiastical courts of England alone had jurisdiction to grant a divorce *a mensa et thoro*, and the law of divorce as developed in the ecclesiastical courts was a branch of the common law of England, which was inherited by the Commonwealth of Virginia as a part of the body of its common law.

There appear to be no printed reports of cases decided by the ecclesiastical courts of England prior to 1809; but the reports of cases decided after that date leave no question that under the common (ecclesiastical) law of England, an ecclesiastical court had, when it granted a divorce *a mensa et thoro*, a continuing jurisdiction over its awards of alimony in such cases; and had and exercised, independently of statutory provision or any reservation of power in the decree, the jurisdiction and power to change or modify its decree, awarding alimony in case of divorce *a mensa et thoro* to meet the changed conditions of the parties subsequently arising. *Otway* v. *Otway*, 2 Phill. Ecc. 109, 161 Eng. Reports, Reprint, 1092; *Cooke* v. *Cooke* (1812), 2 Phill. Ecc. 40, 161 Eng. Reports, Reprint, 1072; *DeBlaquire* v. *DeBlaquire* (1830), 3 Hagg. Ecc. 322, 162 English Reports, Reprint, 1173; *Wilson* v. *Wilson* (1830), cited in note to *DeBlaquire* v. *DeBlaquire, supra*, 162 Eng. Reports, Reprint, at page 1175; *Saunders* v. *Saunders*, 1 Swab. & T. 72, 164 Eng. Reports, Reprint, 634, 4 Jur. N. S. 147, 6 Week, Rep. 328; Bishop, Marriage, Div. & Sep., section 872; Bishop, Marriage and Divorce, section 429.

It is admitted by appellee's counsel in her brief that "in most of the States the majority of the decisions hold" that, when a divorce *a mensa et thoro* is granted and alimony awarded, although the statute contains no provisions authorizing such change or modification,

and though there be no reservation of power made in the decree; yet the court has the continuing power and jurisdiction to change or modify its decree as to alimony to meet the changed condition of the parties; and in our examination we found no case, English or American, holding that in case of divorce *a mensa et thoro* the court has not such continuing jurisdiction over its awards of alimony. For cases upholding such jurisdiction see *Bursler* v. *Bursler* (Mass. 1827), 5 Pick. 427; *Lockridge* v. *Lockridge* (Ky. 1842), 2 B. Mon. 258; *Rogers* v. *Vines* (1846), 28 N. C. (6 Ired. L.) 293; *Kurtz* v. *Kurtz*, 38 Ark. 119. See also *Ruge* v. *Ruge*, 97 Wash. 51, 165 Pac. 1063, L. R. A. 1917F, 721; *Wallace* v. *Wallace*, 74 N. H. 260, 67 Atl. 580, 582, 13 Ann. Cas. 293; *Emerson* v. *Emerson*, 120 Md. 584, 87 Atl. 1033; *Alexandria* v. *Alexandria*, 13 App. D. C. 334; *Going* v. *Going*, 148 Tenn. 522, 256 S. W. 890, 31 A. L. R. 633.

The continuing jurisdiction of the court to modify or change its decree awarding alimony in cases of divorce *a mensa et thoro* is based upon the same sound reasoning upon which the continuing jurisdiction to change or modify its decree with reference to the maintenance of the infant children of the parties is based, the continuation of the relationship out of which the duty to support and maintain arises.

In case of a divorce *a vinculo* the marriage bond is completely severed, and there is no continuance of the marital status. But when a divorce *a mensa et thoro* is decreed there is no severance of the marriage bond. The marital status is not affected thereby; and the parties remain husband and wife, though authorized by the decree to live in separation. Under the Virginia statutes relating to divorce *a mensa et*

*thoro*, as at common law, the door of reconciliation is held open in the hope that the parties may, without a severance of the marriage bond ever having taken place, become reconciled to each other and resume their normal marital relations.

During the continuation of the marital relation there is the continuing duty on the part of the husband to provide his wife with a reasonably sufficient support considering his circumstances and her needs. What is a proper performance of this duty will vary from time to time according to his circumstances and her needs; and the wife may by her misconduct forfeit her right to such support.

The marital status is not affected by a decree of legal separation, *i. e.* a divorce *a mensa et thoro;* and where the wife has been forced by her husband's misconduct to seek a decree of separation, there still continues the said duty, arising out of the marital status, to provide his wife with a reasonably sufficient support considering his circumstances and her needs at any given time, *provided* her right to support has not been forfeited by her misconduct, which forfeiture may be for misconduct prior to the decree for separation or subsequent to the entry of such decree.

However, there is this very important difference. Prior to the institution of the suit for a divorce *a mensa et thoro*, the husband may in large measure decide for himself what he will contribute to the support of his wife, subject to the proviso that it must be reasonably sufficient considering his circumstances and her needs. But after the institution of the suit the amount which he will contribute to her support, or which she may demand that he contribute to her support, is no longer one for the determination of the parties but for the court, whose jurisdiction to regulate this subject having attached ousts the judgment and discretion of the parties.

In exercising its jurisdiction in a suit for divorce *a mensa et thoro* the court is not exercising a jurisdiction to dissolve a marriage, but a jurisdiction to regulate during the continuation of the marital status the rights and duties of the parties arising from the marital status. Upon reason, principle, and authority, under the common law the continuing status of husband and wife, out of which arises a continuing duty of the husband to support his wife, prevents the decree for alimony upon a divorce *a mensa et thoro* from being a final adjudication of the right of the wife to support under conditions arising subsequent to the decree; and gives to the court a continuing jurisdiction over the amount of future installments of alimony to be paid, the power to change or modify its decree with reference thereto for causes arising subsequent to the entry of such decree, and the power, in a proper case, to make operative the wife's forfeiture of her right to support by her misconduct subsequent to the entry of the decree by revoking its decree in so far as it requires the payment to her of future installments of alimony.

Though the appellee admits that "in most of the States the majority of decisions so hold," and cites no case to the contrary, yet she contends that in Virginia the rule stated in *Brinn* v. *Brinn, supra*, is applicable not only to cases of divorce *a vinculo*, but also to cases of divorce *a mensa et thoro*, by virtue of the *provisions* of the Virginia statute on the subject (section 5111, Code Va. hereafter quoted).

The argument of the appellee as stated by her counsel is as follows:

"The statutory power of the court, concerning the maintenance of the parties, is the same in decreeing a divorce *a mensa et thoro* as in (case of a divorce) *a vinculo*, and the court is given no statutory power to mod-

ify the decree in respect to maintenance of the parties or alimony, but the statute (section 5111) expressly gave such power of modification of the decree concerning the care, custody and maintenance of the infant children. Under the rules of construction, *expressio unius est exclusio alterious*, the legislature did not intend to give the court the statutory power to modify the amount of alimony, and therefore, the only way the court could exercise such power of modification, was by reserving the right to modify the decree in this respect, otherwise the decree would be *res adjudicata*, and the court would be without further jurisdiction on this subject, *unless and until it entered the decree a vinculo.*" (Italics in last clause ours.)

For a correct determination of the question raised by the contention made by the appellee, it is helpful to look to the history of the substantive law of divorce and the history of the Virginia statutes conferring jurisdiction upon the courts of chancery to administer that law.

In England, prior to the passage of the matrimonial causes act of 1857, no court had jurisdiction to grant a divorce *a vinculo* dissolving the bonds of matrimony. This power was vested solely in the Parliament; and the act of Parliament in each case became the law thereof, both as to grounds for granting the divorce and with reference to alimony. The ecclesiastical courts had, however, long exercised the power and authority to declare null and void by definitive sentence a marriage which was void *ab initio* for cause existing at the time of the marriage. This was not, however, the granting of a divorce *a vinculo* (*i. e.* the dissolution of the marriage bond), but a definitive sentence declaring that no marriage had ever in fact existed. In such cases the question of alimony to the wife could not arise, as at common law a right to alimony could only arise out of

the marital relation, which in such cases was adjudged never to have existed.

On the other hand, from time immemorial the ecclesiastical courts had and exercised the jurisdiction to grant divorces *a mensa et thoro* for adultery and cruelty, and as an incident thereto to award alimony to the wife, who though judicially separated from him still remained his wife. The jurisdiction to grant divorces *a mensa et thoro* was vested exclusively in the ecclesiastical courts, and neither the courts of common law nor the courts of chancery had such jurisdiction.

Though the law relating to divorce *a mensa et thoro* as administered by the ecclesiastical courts of England was a part of the common law of the land, and became a part of the common law of Virginia, it remained dormant for many years, because neither during the colonial period nor after the revolution were there any ecclesiastical courts in Virginia, nor was there any statute authorizing the courts of common law or chancery to exercise jurisdiction to administer the law of divorce, which under the common law was vested exclusively in the ecclesiastical courts.

Prior to March 1, 1819, no court in Virginia had jurisdiction either to enter a definitive sentence declaring marriage void *ab initio*, or to grant a divorce either *a vinculo* or *a mensa et thoro*. By an act passed March 1, 1819, the superior courts of law were empowered to enter definitive sentences declaring null incestuous marriages (but no others), and to punish the parties. (Rev. Code Virginia 1819, chap. 106, section 18.) It was not, however, until the act of February 17, 1827 (Acts 1826-27, chapter 23), that courts in Virginia were empowered to grant a divorce *a mensa et thoro;* and not until the act of March 18, 1848 (Acts 1847–48, chapter 122), that

the courts were authorized to grant a divorce *a vinculo*, and then only for the one cause of adultery.

In *Almond* v. *Almond*, 4 Rand. (25 Va.) 662, 15 Am. Dec. 781, decided July, 1826, which was a case in which the court held that in Virginia a court of chancery had the inherent power to award alimony to a wife in a proper case when there had been no divorce and no suit for divorce was pending or could be instituted, the court said:

"I find no case with us, in which the subject has been before this court. Having no ecclesiastical tribunal, the powers of that court seem to have been considered as vesting originally in the old general court. From thence, some of them have been distributed to other courts, as they were branched out. The power over the probate of wills, executors and administrators, and distributions, etc., were given to the district, superior, county and corporation courts. I know of no law which has given to any court the trial of matrimonial causes, except so far as relates to incestuous marriages; as to which, a power is given to the court of chancery to annul them. Judge Tucker, in his Blackstone, 3rd volumn 94, says: "With respect to suits for alimony after a divorce *a mensa et thoro*, as there is no court in Virginia which possesses jurisdiction in such cases, so until there is such court, there can be no room for suits of this nature; unless, perhaps, the high court of chancery should sustain them as incidental to its equitable jurisdiction."

The next year the act of February 17, 1827, the first act passed in Virginia authorizing any court to grant divorce, was enacted. Acts 1826-27, chapter 23, page 21. The parts of this act here material are set forth in the foot note.[1]

[1] Section 1. "The superior courts of chancery * * * shall have

This act is neither the enactment of a new code law relating to divorce nor the codification of the common law of divorce. It conferred jurisdiction on the superior courts of chancery to exercise the jurisdiction exercised by the ecclesiastical courts to declare null marriages void *ab initio* and to grant divorces *a mensa et thoro* in accordance with the law of the land, which remained unchanged except in so far as it was changed by express enactment or necessary implication; and so far as the act relates to provisions for the maintenance of the parties there is no change made in the common (ecclesiastical) law either by express enactment or necessary implication.

Though it provides that the procedure in divorce cases shall be the same as that in other suits in chancery, which in some respects differed from the procedure of the ecclesiastical courts, this act does not provide either by express provisions or necessary implications that the substantive law of divorce as it existed at common law is thereby supplanted. On the contrary, it

jurisdiction to hear and determine suits for the dissolution of marriage where the causes alleged therefor shall be natural or incurable impotency of body at the time of entering into the matrimonial contract, idiocy, bigamy; and in such suits * * * they shall have the power by definitive sentence to pronounce and decree the marriage null and void."

Section 2. "The superior courts of chancery shall have cognizance of matrimonial causes, on account of adultery, cruelty and just cause of bodily fear; and in such cases may grant divorces *a mensa et thoro* in the usual method of proceeding in those courts."

Section 3. "In granting divorces *a mensa et thoro* for causes which justify such divorces by the principles of common law, the court of chancery shall have full power to decree perpetual separation and protection to the person and property of the parties, to decree to either, out of the property of the other, such maintenance as may be proper; to restore to the injured party, as far as practicable, the rights of property conferred by the marriage on the other; and so to dispose of the custody and guardianship and provide for the maintenance of the issue of the marriage, as under all the circumstances may seem right. A decree of perpetual separation from bed and board shall have the same effect upon the rights of property which either party may acquire, after the decree, and upon the personal rights which either may enjoy, after such decree, as a divorce *a vinculo matrimonii* would have, save only that no such decree of separation from bed and board shall authorize either party to marry again during the life-time of the other."

is plain that the jurisdiction thereby conferred upon
the courts was to administer the common law of divorce
*a mensa et thoro* as it existed, with only such changes
therein as were made by express provisions of the stat-
ute or by necessary implication therefrom. The ex-
istence and continuation in force of the common law of
divorce as established in the ecclesiastical courts of
England is expressly recognized in section 3 of the act
itself, where it is provided that "In granting divorces
*a mensa et thoro* for causes which justify such divorces
*by the principles of common law*" the courts shall have
the power to award alimony, etc.

Though there is no provision in this act for the de-
fenses of condonation and recrimination which existed
at common law, there can be no doubt that the common
law with reference to these defenses continued in effect
unrepealed by the act. So also, though there is no
provision in the act empowering the court, after a de-
cree for divorce *a mensa et thoro* has been entered, there-
after to change or modify, to meet conditions subse-
quently arising, the provisions of such decree as to the
support and maintenance of either the wife or the in-
fant children of the parties, the common law relating to
the power of a court having jurisdiction in divorce cases
to exercise a continuing jurisdiction over its provisions
for the support and maintenance of both the wife and
the minor children, continued in effect. The provision
of the common law was not repealed by the failure of
the act to expressly provide therefor.

If there could be any question about the fact that
the observations above made with reference to the act
of 1827 are correct, the next act upon this subject, the
act of March 17, 1841 (Acts 1840–41, chapter 71, page
78), makes it unmistakably clear that the act contem-
plates that the jurisdiction given by that act to the

superior courts of law and chancery was to be exercised in accordance with the principles of the ecclesiastical law, and that the principles of the substantive law of divorce as applied by the ecclesiastical courts of England was the law of the land in Virginia.

The material portions of the act of March 17, 1841, which repeal the act of 1827 only in so far as the same comes within the purview of the act of 1841, are set forth in the foot note. [2]

The first act empowering a court in Virginia to grant a divorce *a vinculo* for a cause arising after the marriage was passed in 1848. Until then this power remained vested solely in the General Assembly, as it had been and then was in England vested in the Parliament. But by act passed March 18, 1848 (Acts 1847–48, chapter 122, page 165), which recites that the applica-

---

[2] Act of March 17, 1841 (Acts 1840-41, chapter 71, pagé 78). (Italics ours.)

Section 1. "The circuit superior courts of law and chancery within this Commonwealth shall have jurisdiction to hear and determine suits for the dissolution of marriage, where the causes alleged therefor shall be natural or incurable impotency of body, at the time of entering into the matrimonial contract, idiocy, bigamy, *or for any other cause for which marriage is annulled by the ecclesiastical law;* and in such suits * * * the said courts shall have power by definitive sentence to pronounce and decree the marriage to be null and void; * * * ."

Section 2. "The said circuit superior courts of law and chancery shall have cognizance of matrimonial causes on account of adultery, cruelety, just cause of bodily fear, abandonment, and desertion, *or for any other cause for which a limited divorce is authorized by the principles of the ecclesiastical law;* and in such cases may grant divorces *a mensa et thoro,* in the usual method of proceeding in said courts, in suits in chancery. In such causes, however, the bill shall in no instance be taken for confessed.,,

Section 3. "In granting divorces *a mensa et thoro* for causes which justify such divorces by the principles of the *ecclesiastical law,* the said courts shall have full power to decree perpetual separation, and protection to the persons and property of the parties; to decree to either out of the property of the other, such maintenance as may be proper; to restore to the injured party (as far as practicable) the rights of property conferred by the marriage upon the other; and so to dispose of the custody and guardianship, and provide for the maintenance of the issue of the marriage, as under all the circumstances may seem right. A decree of perpetual separation from bed and board shall have the same effect upon the rights of property which either party may acquire after the decree as a divorce *a vinculo matrimonii* would have, save only that no such decree of separation from bed and board shall authorize either party to marry again during the life of the other."

tions to the legislature for divorces *a vinculo* are becoming frequent and ought, so far as this legislature can do it, be referred to judicial tribunals, the General Assembly conferred jurisdiction upon the circuit superior courts of law and chancery to grant a divorce *a vinculo* for adultery, but for adultery only.

As there was existent no common (ecclesiastical) law relating to divorces *a vinculo* (as distinguished from definitive sentences of annullment) this act contains much more substantive law than do the acts relating to divorce *a mensa et thoro*.

It provided in section 5 thereof that in granting a divorce *a vinculo* it might be granted with or without leave to either of the parties to remarry; and expressly provided that the adultery of the plaintiff or the condonation by the plaintiff of the defendant's adultery should be a bar to the granting of a divorce; both of which were at common law a bar to the granting of a divorce *a mensa et thoro*.

Its provisions with reference to the granting of alimony and allied subjects are copied verbatim from the provisions of the acts of 1827 and 1841 relating to divorces *a mensa et thoro*, and read as follows:

"In granting divorces under this act, the court shall have full power to decree perpetual protection to the person and property of the parties, and to decree to either, out of the property of the other, such maintenance as may seem proper, to restore the injured party, as far as possible, to the rights of property conferred by the marriage on the other, and so to dispose of the custody and guardianship, and provide for the maintenance of the issue, as under all the circumstances may seem right."

Thus stood the law when the Code of 1849 was adopted; and under the law as it then stood, though

there was no statutory authority empowering the court to change or modify the provisions for the maintenance of either the wife or of the minor children contained in a decree for divorce *a mensa et thoro* or *a vinculo* to meet the changed conditions subsequently arising, certainly in the case of a divorce *a mensa et thoro*, the court without any reservation of such power to itself in the decree granting the divorce had the continuing power under and by virtue of the common law which it was empowered to administer to change or modify the provisions of its decree for the maintenance of either the wife or the minor children, or both, to meet changed conditions thereafter arising.

Prior to the Code of 1849, as has been seen, the statutory provisions with reference to decrees for the support and maintenance of the parties and of their minor children in cases of divorces *a mensa et thoro* and divorces *a vinculo*, though identically the same, were contained in separate acts. In the Code of 1849 the provisions for divorce *a mensa et thoro* and for divorce *a vinculo* were included in the same chapter (chapter 109); and the provisions with reference to maintenance of the parties and of their minor children were still kept the same in both classes, but were contained in the same section (section 12, chapter 109, Code 1849).

The language of section 5111, Code of Virginia 1919 (with the exception of the last sentence), is section 12, chapter 109, Code 1849, unchanged in any particular.

By Acts 1926, page 105, chapter 107, section 5111, Code of Virginia 1919, was so amended as to omit the words placed by us in italics in the below quotation thereof; but by Acts 1927 (Ex. Sess.), page 184, chapter 85, the italicized words were restored to the section; and section 5111, Code 1919 (with the exception of the last sen-

tence, which was added later), is now in the identical language of section 12, chapter 109, Code 1849. Section 5111, Code 1919, reads:

"Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, the court may make such further decree as it shall deem expedient concerning *the estate and* the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children, and may determine with which of the parents the children, or any of them, shall remain; and the court may, from time to time afterwards, on petition of either of the parents, revise and alter such decree concerning the care, custody and maintenance of the children, and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require. Upon the entry of a decree of divorce from the bond of matrimony, all contingent rights of either consort in the real and personal property of the other then existing, or thereafter acquired, shall be extinguished." (Section 5111, Code 1919; Acts 1927 (Ex. Sess.), page 184, chapter 85; section 2263, Code 1887; section 12, chapter 109, Code 1849).

The provisions of the acts of 1827 and 1841 relative to what provision may be made in a decree *a mensa et thoro* for the maintenance of the parties and of their minor children are declaratory of the common law. Section 12, chapter 109, Code 1849, makes no material change in the statutory law as it was contained in the Acts of 1827 and 1841 relative to what provisions for maintenance of the parties and minor children may be made in a decree granting a divorce *a mensa et thoro*, which by act of 1848 was also made applicable to divorce *a vinculo*. Therefore, the fact that by section 12,

chapter 109, Code 1849 (section 5111, Code Virginia 1919), the same provisions as to what may be included in a decree for divorce relative to the maintenance of the parties and their minor children are made applicable to both divorce *a mensa et thoro* and divorce *a vinculo*, cannot be said to raise any implication that the common law applicable to provisions for maintenance of the wife in cases of divorce *a mensa et thoro* is thereby intended to be abrogated, and some rule of law not expressed in the statute or contained in the common law of divorce *a mensa et thoro* substituted therefor.

Nor does the fact that section 12, chapter 109, Code 1849 (section 5111, Code 1919), enacts as a part of the statute law of the State the common law rule authorizing the court in a case for divorce *a mensa et thoro* to exercise a continuing jurisdiction over the maintenance of the minor children, abrogate by implication the corresponding common law rule which in case of divorce *a mensa et thoro* empowered the court to change or modify its decree awarding alimony to the wife in order to meet the changed conditions of the parties subsequently arising, or to make operative the forfeiture by the wife of her right to the continued support of her husband by her misconduct subsequent to the entry of the decree and while the marital status continued.

The fact that the provisions of section 12, chapter 109, Code 1849 (section 5111, Code 1919), relative to the provision to be made for the maintenance of the parties and of their minor children are therein made applicable where the decree (1) passes a definitive sentence of annullment of marriages void *ab initio*, (2) grants a divorce *a mensa et thoro*, or (3) grants a divorce *a vinculo*, may be a strong reason for applying to cases of divorce *a vinculo* the same rules as to alimony which

at common law apply in cases of divorce *a mensa et thoro;* but it affords no reason for applying the rule stated in *Brinn* v. *Brinn, supra,* to cases in which the alimony has been awarded in a decree granting a divorce *a mensa et thoro.*

But the appellee contends that even if the court has power to change or modify an award of alimony made in a decree granting a divorce *a mensa et thoro,* it has no power to change or modify the provisions of the decree here in question, because the decree is not a decree awarding to Marjorie Gloth alimony and adjudicating the property rights of the parties, but is merely a decree ratifying, confirming and approving a contract voluntarily entered into between the parties by which *in lieu of alimony* to be awarded by the court and in lieu of an adjudication of the property rights of the parties by the court, the parties agree what payments shall be made for support and maintenance and what shall be the property rights of the parties.

Her contention, stated in the language of her counsel is: "When the court ratified, confirmed and approved the contract and the deed of trust, concerning their property rights and her claim for alimony, all in lieu of alimony, etc., as it had a right to do, it had no jurisdiction in the divorce suit to enforce compliance with such contracts or to alter their terms." Appellee cites the following cases as sustaining this position: *Moore* v. *Crutchfield,* 136 Virginia 24, 116 S. E. 482; *Eschner* v. *Eschner,* 146 Virginia, 417, 131 S. E. 800, *Newman* v. *McComb,* 112 Virginia, 410, 71 S. E. 624; *Barnes* v. *American Fertz. Co.,* 144 Virginia, 692, 130 S. E. 902. These cases do not reach the vital point here involved.

The defect in this contention of the appellee is that the decree of the court in this case does not simply ratify, confirm and approve the said contract between the

parties. The court does not leave the rights of the parties to be determined by this contract and to be enforced as contract rights. Having ratified and confirmed the provisions of said contract and deed of trust, the court goes further. It incorporates the provisions of said contract and deed of trust in its decree, and adopts the provisions of the contract agreement as its judgment as to what provisions the husband shall make for the maintenance of his wife and minor child and as to the adjustment of the property rights of the parties; and decrees as the order of the court that William C. Gloth do pay to Marjorie Gloth $50.00 per week for the support and maintenance of herself and her child, and carry out and perform all other provisions of said contract and property settlement; and that the marital rights of each in the property of the other be and are thereby extinguished. See paragraphs b and c of the degree of July 7, 1926, heretofore quoted.

Said contract is clearly a divisible contract. One part thereof deals with the settlement of the property rights of the husband and the wife. The other part thereof deals with the provision to be made for the support and maintenance of the wife and the minor child of the parties, and provides for the payment of the weekly sum of $50.00 for their support without definition of the portion thereof applicable to the support of each. The parties in the contract itself treat it as a divisible contract. In paragraph 6 of said contract (quoted *ante*) this fact is recognized, and it is provided that the court shall be asked "to ratify and confirm this property settlement in its entirety," and that the court shall be asked "to direct the payment of the said sum of $50.00 per week."

The contract itself makes it plain that it was the intention and request of the parties that the court should

not merely approve and confirm the agreement of the parties as to the support and maintenance of the wife and child; but that the court should, though accepting the agreement of the parties as evidence determinative of the terms of its decree, adjudge and decree what provision William C. Gloth should make for the maintenance and support of his wife and minor child in such form that compliance therewith could be enforced as a decree of the court and not merely as a contract right. See paragraph 7 of said contract hereinbefore quoted.

The settlement of the property rights made by the contract of the parties and the decree of the court with reference to the estate (*i. e.* the property) of the parties are the same. The court clearly had the power to approve and confirm said contract both as to the property settlement and as to the provisions for support and maintenance. *Wallace* v. *Wallace*, 74 N. H. 260, 67 Atl. 580, 13 Ann. Cas. 293; *Emerson* v. *Emerson*, 120 Md. 584, 87 Atl. 1033; *Barnes* v. *American Fertz. Co.*, 144 Va. 692, 130 S. E. 902. But the appellee insists that the court, when this decree was entered, had no power to decree concerning the estate of the parties because of the amendment made to section 5111 of the Code by Acts 1926, page 105, chapter 107. (See *ante.*) It is without profit to discuss the power of the court at the time this decree was entered to decree relative to the estate of the parties, for whether these property rights be fixed by the terms of the decree or by the terms of the contract, the court is without power to divest these property rights because of the changed condition of the parties or the subsequent misconduct of the parties or either of them.

However, so far as the contract relates to the payment of $50.00 per week for the support and main-

tenance of the wife and minor child, the court unquestionably had the power to supersede the contract provisions by its own judgment and decree; and this it has plainly done, and done at the instance of the parties themselves. Having done so, it has all the power to revoke, change or modify this award as it would have had had no contract been entered into between the parties. *Wallace* v. *Wallace*, 74 N. H. 260, 67 Atl. 580, 13 Ann. Cas. 293; *Emerson* v. *Emerson*, 120 Md. 584, 87 Atl. 1033; *Southworth* v. *Southworth*, 168 Mass. 511, 47 N. E. 93.

So far as the provisions of the contract for the support of the wife and minor child are concerned, the result would be the same had the court merely approved the contract. The statute expressly gives the court the continuing jurisdiction to change or modify its decree as to the custody and maintenance of minor children. This power cannot be taken away by a contract made between their parents; nor can it be rendered nugatory by the device of making only a single provision for the support and maintenance of the wife and child, without definition of their several rights.

The contention of the appellee that, under the terms of said contract, the appellant was bound to pay appellee the weekly payments until her death or remarriage, even though the appellant should die before her death or remarriage, and that, therefore, the decree having adopted the provisions of the contract must be held to be an award in lieu of alimony and not alimony, is not well made. Under no reasonable construction of this contract can it be construed to provide for the payment of an annuity to the wife during her lifetime, provided she does not remarry.

The next contention of the appellant is that he is not only entitled to have the court revoke the pro-

visions of the decree as to the maintenance of the wife, but that he is also entitled to have the whole of said contract annulled, and set aside because his execution thereof and his consent to the approval thereof by the court were procured by fraud and duress. The gist of the allegations with reference to appellant's charges of fraud and duress are thus summarized by counsel for appellant in his petition for appeal.

The facts alleged with reference to the charge of duress "show this petitioner to have been holding an important public office and engaged in a campaign for reelection; at the same time he was a partner in a firm dealing largely in real estate purchased for resale at a profit, with many contracts for resale, and the title in the individual names of the three partners, and his wife threatening him with false charges affecting his public and private character as a man and as a husband, and refusing positively to unite in deeds essential to be executed by her in order that he should carry out the obligations of his contract to his partners and with the vendees to whom they had sold these lands, unless he should enter into this unrighteous contract. Confronted with the necessity for the choice, as detailed in the allegations of the bill, his will was overcome and he, already under this duress, signed the contract."

While the demurrer confesses, for the purposes of the demurrer, that the allegations of the bill are facts, among them the allegation that the will of the appellant was overcome by the threats of the appellee; yet the circumstances plead show a situation in which it was incumbent upon the appellant to have proceeded promptly upon the removal of the duress, if such existed, to repudiate the contract. The fact that the appellant alleges that in spite of said contract the appellee for more than two years "has continually and

without just cause or excuse conducted a campaign of slander, detraction and vilification of him in the county of Arlington and outside thereof for the openly declared purpose of ruining him," shows that any duress due to fear of being slandered and vilified by his wife was necessarily removed by the happening of the very thing he says he had sought to avoid by the execution of the contract. The election for Commonwealth's attorney, for which place he was a candidate for reelection, was held in November, 1927. So early in November, 1927, what fear he might have had that his wife's slandering and vilifying of him would prevent his reelection was removed. Yet for about two years after the execution of said contract and for some six months after said election he continued to treat said contract as a valid and subsisting contract, and to accept the benefits thereunder. Nor does he move to avoid the contract for duress until he conceives that the misconduct of his wife subsequent to the entry of said decree for divorce *a mensa et thoro* will entitle him to a decree which will cut off her marital rights, and give him the benefits of the contract without the burdens thereof. Though the bill prays that Mrs. Gloth be required to restore to Mr. Gloth all property received by her under said contract "and not used by her in the support and maintenance" of herself and minor child, the bill nowhere offers to restore her to her *status quo* in regard to her property rights or alleges that there has been no such intervention of the rights of third parties as will not make the reestablishment of the *status quo* impossible.

Upon a consideration of the whole bill we are of opinion that it shows such a state of facts that the appellant is now estopped and ought not in equity now be heard to plead that the contract was voidable be-

cause the execution and delivery thereof was originally procured by fraud, coercion and duress.

But though the appellant will not now be heard to say that the said contract is void because of the alleged duress and coercion, and the property settlement made between the parties under said contract, which was approved and confirmed by said decree, is not subject to avoidance by reason of any matter in said bill pleaded, the court erred in dismissing the whole bill. For as has been said, the court has a continuing jurisdiction not only over the care, custody and maintenance of the minor child, but also over the provisions which, in accordance with the agreement of the parties as expressed in said contract, it made in its decree *a mensa et thoro* for the support and maintenance of Mrs. Gloth; and has the power to change or modify said provisions for the support of Mrs. Gloth to meet the changed condition of the parties, and, upon a proper case, made to revoke the provisions made for the support and maintenance of Mrs. Gloth because of her adultery or other improper conduct subsequent to the entry of said decree for divorce *a mensa et thoro*. The bill alleges such a case of proper conduct upon the part of Mr. Gloth and of gross misconduct on the part of Mrs. Gloth, as has, if proved, forfeited the right of Mrs. Gloth to the further support of her husband, and entitled him to have the provisions of said decree revoked in so far as it relates to the payment of future installments for her support and maintenance.

However, appellant was not entitled to be the judge of whether or not Mrs. Gloth had forfeited her rights to be supported and maintained by him. It was his duty to have continued to comply with the order of the court that he pay to Mrs. Gloth the sum of $50.00 per week for the support and maintenance of herself and child until the same was changed, modi-

fied or revoked by the court; and he was and is in contempt of the court in that he has not done so. While the court has it in its power to punish him for this contempt, the dismissal of his bill, which has the effect of forever denying to him the right to have the court pass upon the question of his rights in the bill alleged, was not a proper punishment for his contempt. But the court may, and should, upon this case being remanded, refuse to proceed further with this case until the appellant had purged himself of his contempt by paying to Mrs. Gloth, in accordance with the terms of the decree of July 7, 1926, such sums past due under the provisions of said decree as the trial court after a hearing with reference thereto shall require.

The next contention made by the appellant is rather elusive and difficult to define specifically; but it appears to be that he is entitled to have the contract between himself and his wife rescinded because there has been a failure of consideration. The gist of the allegations on this point is that, though it is not so expressed in the contract, he entered into said contract with Mrs. Gloth upon the implied condition that she should maintain her chastity and that she should cease her campaign of slander, detraction and vilification which she had inaugurated against him; and that as she has been guilty of adultery and has continued her campaign of slander, detraction and vilification, the consideration upon which he entered into the contract has failed.

The contract does not provide that it is made a condition thereof that it should be voidable should the wife be guilty of adultery, or should she not cease to slander and vilify him. Such conditions are certainly not necessarily implied from the contract, and the court has no power to insert these conditions into the contract of the parties and thereby make a new contract for them.

■■ The appellant attempts to get these conditions inserted into the contract upon the theory that they formed a part of the consideration of the contract, though not expressed therein. While it is true that the parol evidence rule does not prevent the true consideration for a contract being shown, yet under this exception to the parol evidence rule it is not permissible to insert into the contract a condition or provision for the termination thereof which is not included in the contract. Further than this there is no allegation in this bill that the parties ever agreed between themselves that these should be conditions of the contract; and it is certainly not permissible to prove as the consideration of a contract a consideration which the parties have never been agreed should be a consideration of the contract. To do so is not to prove the true consideration of the contract, but to insert therein a consideration which was not a consideration thereof.

■ However, in so far as this contract relates to provisions for the maintenance of the wife and minor child, it is clearly an agreement as to the provisions which should periodically be paid to the wife for the support and maintenance of herself and minor child and an agreement to ask the court to adopt these agreed provisions as its judgment and to order such payments to be made; and the contract does not deprive the court of its power thereafter to revoke, change, or modify its judgment and decree with reference thereto, nor operate to require the continuation of these payments should the court revoke, change or modify its decree.

■ The grounds of demurrer numbered 7, 8 and 9 above are not, we think, good grounds of demurrer.

The decree of the lower court will be reversed and this cause remanded for further proceedings to be had therein not in conflict with the views herein expressed.

*Reversed and remanded.*