# Richmond

JOSEPHINE D. CASILEAR *v.* RAPHAEL A. CASILEAR.

March 11, 1937.

Present, All the Justices.

The opinion states the case.

*John Locke Green*, *C. R. Ahalt* and *E. N. Hosmer*, for the appellant.

*William C. Gloth*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The appellant, Josephine D. Casilear, was on November 19, 1917, in a suit brought by her, granted by decree of the

Circuit Court of Fairfax county, a divorce *a mensa et thoro*. The decree awarded her "alimony in the sum of $25.00 per month, the same to become due and payable on the first day of each and every month hereafter," together with counsel fees and costs. No provision was made therein adjusting the rights of either party in and to any other property of either. It also provided at the conclusion thereof,—"And this cause is now placed upon the Stet Docket of this Court for such other and further action as may be had, or taken hereafter." No further proceedings have been taken to merge the decree *a mensa et thoro* into a decree *a vinculo*.

On July 18, 1934, nearly seventeen years later, the appellant filed a petition in the original cause, duly sworn to, and caused a copy thereof to be served on the defendant in person. This petition set out the terms of the decree *a mensa et thoro*, and the fact that the cause had been placed upon the stet docket of that court *"for such other and further action as may be had, or taken hereafter"*; that petitioner had met with some difficulty in securing promptly the payment of the awarded alimony, being required to obtain assistance from the court by the issuance of rules against the defendant to secure compliance therewith; that such award was limited originally because of the alleged meager income of the defendant, and was wholly inadequate to furnish to her the necessary support and maintenance, considering her age and inability to work; and that she had been, and was then in dire need of funds to provide even the ordinary comforts of life; that she was informed, and believed, that the defendant had in recent years come into possession of large sums of money and property, and was so situated financially as to justify an increase in the amount of alimony to such a sum as would be adequate to provide for her the necessities and comforts of life; that she had begged and importuned the defendant, in view of his improved financial condition, to enlarge the alimony, but he had refused to discuss the matter, and had invited her to again resort to the court for relief. The petition concluded with the prayer that the cause be removed from the stet docket, and placed upon the active

docket; that a rule issue requiring the defendant to appear, and to show cause why the decree heretofore entered should not be reconsidered by the court, and the defendant be required to pay alimony in keeping with his present financial ability and her needs; that the defendant be required to disclose his property and income and his ability to pay a larger sum of alimony; and for such other and further relief as to the court might seem meet and proper.

The defendant on the 15th day of August, 1935, appeared and filed his answer to the petition, in which he did not deny the allegations of the petition, but alleged them to be immaterial. For further answer he set up as a new matter of defense that the petitioner by a contract dated March 9, 1918, subsequent to the divorce decree, had released him, as the husband of the plaintiff, from any and all further claim to any alimony, or to any right or interest in any property then owned, or thereafter acquired by him. Under this contract, the defendant conveyed to the appellant certain real estate in the District of Columbia, subject to a deed of trust in the sum of $2500, in lieu of alimony and further support, and in consideration of the release by the petitioner of all right, claim, and interest, including dower in the property of the husband, then owned or thereafter acquired. The answer further alleged that the agreement was drawn at the appellant's request, by counsel for her, and that she fully knew and understood the contents thereof, and that it settled all property rights and claim for support between them, past and future. He alleged compliance on his part with all the terms of the agreement.

The appellant filed a reply to the answer, and alleged that the said contract was inadequate, unfair and unjust, and was executed by her inadvisedly and improvidently at a time when she was in destitute circumstances, and ill of body, and under painful mental strain as a result of the defendant's ill treatment of her, and was a part of a concerted scheme on the part of the defendant to defraud her out of that to which she was justly entitled under the law and in equity; that the property in the District of Columbia conveyed to

her, subject to a lien of $2500, provided so small an income that she was unable to protect her investment without the assistance of her friends, and that the income therefrom realized was less than the net sum of $20 monthly; that the defendant had cunningly sought to place the appellant in a position whereby she could not pay off the lien of $2500; that a foreclosure being imminent, he stated that he would buy back the property for the amount due thereon, thereby destroying her equity therein, as well as securing a discharge of his original obligation to pay the note secured by the deed of trust on said property; and that if this were permitted and by virtue of the said contract no payments were made to her, he would thereby escape altogether from providing for her maintenance and support. She offered to reconvey the real property to the defendant, and prayed that the defendant be required to show that the contract was adequate, fair and just, and not a scheme to defraud her; and that he be required to furnish her necessary and adequate maintenance and support in keeping with his financial ability. She further moved the court to strike out such part of defendant's answer as set up the contract by way of defense to her proceeding.

The trial court, by decree entered October 30, 1935, stated: "This cause came on this day to be heard upon the papers formerly read including the petition and bill of complaint of the complainant, the answer of the defendant and the replication and motion to strike out, filed on behalf of the complainant and argument of counsel." No objections or exceptions appear in the record to the filing of any replication, or motion to strike of the plaintiff, and no evidence appears to have been taken. The decree then further reciting "The Court being of the opinion that the complainant is not entitled to the relief asked for and sought in said petition and bill of complaint, and the Court being of the further opinion that the petitioner is not entitled to any relief of any kind whatever," ordered the bill of the complainant or petition to be dismissed at the cost of the petitioner.

To this action of the trial court and its ruling, the appellant

duly excepted, and upon this ruling the case is before us.

The appellant assigns as error the following:

(1) The action of the trial court in dismissing the plaintiff's petition at her cost without hearing evidence thereon, or evidence to show the conditions under which the contract of March 9, 1918, was executed.

(2) The action of the trial court in refusing to strike out that portion of the defendant's answer, in which he set up the contract of March 9, 1918, as a complete defense, or bar, to this proceeding.

██ The defendant, in his brief, relies chiefly upon alleged technical defects in the petitioner's pleadings, and contends that her reply to the answer of the defendant, is neither a motion to strike, nor a general replication, and that so far as consideration of this case is concerned, it is merely surplusage. He enters into an interesting discussion with reference to the form, nature, and effect of the motion to strike, and of the distinction between a general and a special replication. Since the defendant made no objection to the form, nature, or employment of the petitioner's reply to the answer of the defendant in the court below, his objection, for the first time in this court, now comes too late and cannot be regarded.

██ We would not discuss these defenses further, but for the fact that this case must be remanded upon other grounds for further hearing. It will be noted that the reply of the appellant is termed a "replication" both in the decree of October 30, 1935, and in the stipulation of counsel for both parties, with reference to the papers to comprise the record to be presented to this court. Replications are usually employed only to deny a defendant's plea or answer, and are not always filed formally in writing. Under the Va. Code 1936, section 6138, it is made the duty of the clerk of court to file a general replication when an answer is filed at rules. It is the usual practice in the courts when it is not so filed by the clerk, or by a party in writing, to treat it as filed as a matter of course, in order to produce an issue. And so it seems to have been treated here. If the pleading of the

appellant here had been treated as a special replication, upon objection thereto it might have been withdrawn, and a general replication filed, or leave given to amend the petition. 1 Barton's Chancery Practice (3d Ed.), page 410. If such pleading was treated as a demurrer, and as such, had been overruled, it would have been proper to have granted the appellant leave to amend her petition.

It would have been better practice to have made the motion to strike out in a pleading separate from the replication. Under Va. Code 1936, section 6123, the motion to strike out now takes the place of exceptions to answers for insufficiency. The effect of the motion to strike out is to admit that even if the facts set up in the answer are true, yet they are not sufficient as a matter of law to constitute a bar to the action or proceeding. *Swann* v. *Atlantic Life Insurance Company*, 156 Va. 852, 159 S. E. 192; *Thomasson, Adm'r, etc.* v. *Walker, et al.*, post page 247, 190 S. E. 309, (this day decided.)

The record fails to show any ruling on the motion to strike. The recitals of the decree indicate by the fact that no evidence was taken, that the motion to strike was overruled and the case disposed of on the basis of a hearing on the bill and answer only, and that the court regarded the contract of March 9, 1918, as a complete bar to the relief asked for. Otherwise we are unable to ascertain how, in the absence of any testimony, the court arrived at the conclusion of fact whereby it held the complainant not entitled to relief. The cause, however, was not heard by consent upon the bill and answer only, and the appellant did not thereby agree to test the insufficiency in law of the answer. In the view that we take of the effect of the answer, as hereinafter set out, the motion to strike should have been sustained.

The principal question for us to determine is whether the contract of March 9, 1918, superseded the provisions for the support of the wife in the decree of November 19, 1917.

The subject of antenuptial and postnuptial contracts as affecting the rights of the parties in divorce proceedings,

and the powers of the courts having jurisdiction thereover, has been well covered in recent decisions in Virginia.

In the case of *Cumming* v. *Cumming*, 127 Va. 16, 102 S. E. 572, 576, where an antenuptial contract was in question, this court held in a proceeding for divorce: "And the weight of authority and better opinion, indeed, is that even *bona fide* antenuptial and postnuptial contracts, valid in all other respects, cannot bind the action of the court on the subject of alimony. The court will usually adopt such contract provisions if just and reasonable; otherwise it will not do so."

In the case of *Gloth* v. *Gloth*, 154 Va. 511, 153 S. E. 879, 886, 71 A. L. R. 700, there was a contract for a property settlement made between the parties during the pendency of the suit. This contract was ratified and confirmed by decree of the court, and the cause removed to the stet docket, with leave to either party to make further application to the court for such further orders and decrees therein as might be authorized by law. Subsequently, the husband filed a bill against Mrs. Gloth praying that the former divorce suit be restored to the active docket of the court, and that his bill be treated as a petition and cross-bill therein, and further praying, on the grounds assigned, that the contract adjusting their property rights be annulled and cancelled.

In the well considered opinion in this case, the late Justice Epes reviewed many authorities, and with reference to the power of a court of appropriate jurisdiction to exercise control over the necessity for and amount of alimony, held:

"The continuing jurisdiction of the court to modify or change its decree awarding alimony in cases of divorce *a mensa et thoro* is based upon the same sound reasoning upon which the continuing jurisdiction to change or modify its decree with reference to the maintenance of the infant children of the parties is based, the continuation of the relationship out of which the duty to support and maintain arises.

"In the case of a divorce *a vinculo* the marriage bond is completely severed and there is no continuance of the marital status. But when a divorce *a mensa et thoro* is decreed

there is no severance of the marriage bond. The marital status is not affected thereby; and the parties remain husband and wife, though authorized by the decree to live in separation. Under the Virginia statutes relating to divorce *a mensa et thoro*, as at common law, the door of reconciliation is held open in the hope that the parties may, without a severance of the marriage bond ever having taken place, become reconciled to each other and resume their normal marital relations.

"During the continuation of the marital relation there is the continuing duty on the part of the husband to provide his wife with a reasonably sufficient support considering his circumstances and her needs. What is a proper performance of this duty will vary from time to time according to his circumstances and her needs; and the wife may by her misconduct forfeit her right to such support * * * *.

. · " * * * But after the institution of the suit the amount which he will contribute to her support, or which she may demand that he contribute to her support, is no longer one for the determination of the parties but for the court, whose jurisdiction to regulate this subject having attached ousts the judgment and discretion of the parties.

"In exercising its jurisdiction in a suit for divorce *a mensa et thoro* the court is not exercising a jurisdiction to dissolve a marriage, but a jurisdiction to regulate during the continuation of the marital status the rights and duties of the parties arising from the marital status."

Another phase of the question, in the form of a postnuptial contract made subsequent to the entry of a divorce decree, is presented in the case of *Capell* v. *Capell*, 164 Va. 45, 178 S. E. 894. In that case upon the entry of a divorce *a vinculo*, the court allowed the former wife $125 per month for the support of herself and her daughter, so long as both should live, or until further order by the court. After the marriage of the daughter, a contract was made between the parties whereby Mrs. Capell agreed to receive for her support from her former husband a much smaller sum than the amount allowed by the court. When Capell defaulted in making

these later payments, and a rule was issued against him, he contended that the decree of alimony was superseded by the contract, and that his obligation to pay rested upon the contract alone. The trial court held him in contempt and he appealed.

In answering the question as to whether the provisions for support in the court decree in that case, were superseded by the contract afterwards made, and, if so, whether the parties had the power to make such a contract *in pais*, it was there held that neither contention was sound.

In Virginia, the power of a trial court to award alimony is incidental, inherent and express. When appropriate jurisdiction exists over the parties and the subject matter, the court may enter such orders as are necessary and proper to protect the interest of the wife, and its jurisdiction cannot be ousted by any agreement outside of the court, which the court itself does not adopt and approve. Even in a final decree for a divorce *a vinculo*, a court has power to retain jurisdiction to enter orders dealing with alimony, and the right to regulate the proper amount to be paid; to supervise any agreements made between the parties with reference thereto; and to enforce agreements between the parties, if fair and equitable, and to decline to recognize them when unfair and inadequate. Both the adequacy of the provisions of such agreement and the conditions under which it may have been entered into are proper subjects of inquiry by and concern to the courts. *Brinn* v. *Brinn*, 147 Va. 277, 137 S. E. 503; *Bray* v. *Landergren*, 161 Va. 699, 172 S. E. 252.

Virginia Code 1936, section 5111, provides: "Upon decreeing the dissolution of a marriage and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties or either of them. * * * "

The case before us has only progressed so far as to produce a decree *a mensa et thoro*. That decree expressly retained the cause on the docket with further jurisdiction

thereover. It was still the duty of the court, and it had the power, to exercise a continuing supervision over the amount of alimony which the defendant should be required to pay to the appellant, a power to be exercised with judicial discretion. Especially in determining the amount to be allowed, the court will necessarily take into consideration the changed situations, if any, occurring over a period of years to either party, both with reference to property acquired, income received, and the amount necessary for reasonable support and maintenance of the wife. Whether or not the real property conveyed by the husband to the wife, under the postnuptial agreement, should be reconveyed to the husband, will be considered by the court in its determination of the fairness of that agreement, and the means employed in securing same.

For the above reasons, we are of opinion to reverse the decree of October 30, 1935, and to remand this cause for further hearing, in accordance with the views herein expressed.

*Reversed and remanded.*