DAVID ALLEN KELLEY

v.

MARILYN GIBSON KELLEY

No. 0464-91-3

Decided September 21, 1993

COUNSEL

Charles B. Phillips (Phillips, Doherty & Swanson, on briefs), for appellant.

Jonathan S. Kurtin (Harvey S. Lutins; Lutins and Shapiro, on briefs), for appellee.

**UPON A REHEARING EN BANC**

OPINION

**BAKER, J.**—In this rehearing *en banc* appeal from a majority opinion by a panel of this Court released on December 17, 1991,[1] we reverse that portion of the judgment contained in a decree entered by the Circuit Court of the City of Roanoke (trial court) on February 19, 1991, that declared the child support reimbursement provisions of a Property Settlement Agreement (PSA) executed by David Allen Kelley (husband) and Marilyn Gibson Kelley (wife), which had been ratified, affirmed and incorporated by reference in a decree of divorce entered by the trial court on September 23, 1985, to be "null and void . . . against public policy," and unenforceable. For the reasons that follow, we hold that after the expiration of twenty-one days immediately following the entry of the 1985 divorce decree, except to modify the amount of child support, the trial court lacked jurisdiction to alter the terms of the PSA or the decree.

The marriage of husband and wife was dissolved by decree of the trial court entered on September 23, 1985. Two children were born of the marriage. On April 29, 1985, the parties executed a PSA that was ratified, affirmed and incorporated by reference into the divorce decree. Relevant to this appeal, the PSA contained the following provisions:

---

[1] *Kelley v. Kelley*, 13 Va. App. 424, 412 S.E.2d 465 (1991).

The parties hereto agree, in consideration of Husband relinquishing all of his equity in the jointly-owned marital home,[2] that Husband shall never be responsible for payment of child support. The party of the second part covenants and agrees never to file a petition in any Court requesting that David Allen Kelley be placed under a child support Order because Marilyn Gibson Kelley has accepted all of David Allen Kelley's equity in lieu of requesting child support.

In the event Marilyn Gibson Kelley should ever petition any Court of competent jurisdiction for support and maintenance of Joshua Caleb Kelley and/or Joanna Caren Kelley, and should a Court grant any such child support award, the said Marilyn Gibson Kelley hereby covenants and agrees to pay directly to David Allen Kelley, any amount of support that he is directed to pay to any party. In other words, Marilyn Gibson Kelley is agreeing to hold harmless David Allen Kelley from the payment of any amount of child support, regardless of the circumstances under which he is paying the same.

On October 31, 1990, husband filed a motion requesting that the trial court order definite and specific visitation rights, and enjoin wife from "harassing and/or communicating with him at any place." Wife countered by asking the trial court to order husband to pay support for their children. Pursuant to the PSA that had been incorporated into the divorce decree, husband moved the trial court to order wife to reimburse husband for any child support monies he may be ordered to pay.

On February 19, 1991, the trial court ordered husband to pay wife $604 monthly as support for the two children, and denied husband's motion for reimbursement after declaring the reimbursement provision to be null and void as contrary to public policy. Husband concedes that, notwithstanding the passage of more than twenty-one days immediately following the entry of the divorce decree, the trial court has the limited power to modify its prior decrees relating to the amount of child support husband may be required to pay. *Rook v. Rook,* 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987). In fact, the PSA obviously anticipated that wife might subsequently petition the court for child support. However, husband contends that because the terms

---

[2] When the transfer of husband's interest was conveyed to wife, pursuant to the PSA, the equity in the marital home was $40,500.

of the PSA constituted a valid, binding contract that was incorporated into the divorce decree, the trial court did not have authority to modify the terms of the PSA or the decree ordering compliance with its terms.

In *Rook,* while still living together, a married couple executed a PSA in contemplation of a separation. *Id.* at 93, 353 S.E.2d at 757. Generally, such agreements are void as against public policy because they tend to encourage divorce. *See Chattin v. Chattin,* 245 Va. 302, 310, 427 S.E.2d 347, 352 (1993). The trial court, by *a vinculo* decree, dissolved the Rook marriage and incorporated the PSA into the decree. In a subsequent contempt proceeding for failure to comply with the terms of the decree, the husband contended that the PSA was void *ab initio* and unenforceable as against public policy because it facilitated separation and divorce. The circuit court agreed. *Rook,* 233 Va. at 93, 353 S.E.2d at 757. On appeal, Rook's former wife, relying upon Rule 1:1, asserted that the trial court did not have jurisdiction after twenty-one days to modify the divorce decree. The Supreme Court agreed with the wife's argument.

Where the trial court affirms, ratifies and incorporates such an agreement into its decree by reference, " 'it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.' " *Id.* at 94, 353 S.E.2d at 757 (quoting Code § 20-109.1). Upon the expiration of twenty-one days, the judgment of the trial court may not be modified unless the judgment is void as having been obtained by extrinsic or collateral fraud, or entered by a court that did not have jurisdiction over the subject matter or the parties. *Id.* at 95, 353 S.E.2d at 758; *see also Jones v. Willard,* 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983); *Cofer v. Cofer,* 205 Va. 834, 836-37, 140 S.E.2d 663, 665-66 (1965).

Notwithstanding Rule 1:1, a *void* judgment may be attacked in any court at any time, directly or collaterally. *Rook,* 233 Va. at 95, 353 S.E.2d at 758. However, a void judgment is one that has been procured by extrinsic or collateral fraud, or entered by a court that did not have jurisdiction over the subject matter or the parties. *See id.; see also Owusu v. Commonwealth,* 11 Va. App. 671, 672, 401 S.E.2d 431, 431 (1991).

In the case before us, there is no claim that, when the PSA was executed and the divorce decree entered, the parties were not *sui juris,* or that the PSA was obtained by extrinsic or collateral fraud. Moreover,

there is no claim that the circuit court lacked jurisdiction of the subject matter and the parties. *See Owusu,* 11 Va. App. at 672-73, 401 S.E.2d at 431. The divorce decree that incorporated the PSA orders that "the parties are directed to strictly abide by the terms of said agreement." The present challenge to the validity of the agreement and divorce decree "could and should have been raised before the divorce decree was entered or within 21 days thereafter." *Rook,* 233 Va. at 95, 353 S.E.2d at 758; Rule 1:1. After the expiration of twenty-one days from the date the divorce decree was entered, the trial court lost jurisdiction of the case, except for the limited purposes of revising child custody and support. *Rook,* 233 Va. at 95, 353 S.E.2d at 758; Code § 20-108.

We hold that on February 19, 1991, the trial court was without jurisdiction to enter a decree that effectively declared the reimbursement portion of the divorce decree to be a void judgment. Accordingly, we hold that the trial court erred when it declared that portion of the PSA to be invalid as against public policy.

Wife argues that Rule 5A:18 precludes this Court from applying Rule 1:1 because husband failed to raise the issue before the trial court. However, husband premised his entire argument before the trial court upon the enforcement of the PSA. Because the PSA was incorporated into the divorce decree and was a term of that decree, our consideration of the void judgment issue is appropriate.

▇ When the circuit court entered the divorce decree by affirmation, it approved the validity of the PSA. When it ratified and incorporated its terms into the divorce decree and directed the parties to abide by its provisions, the parties were obligated to observe its terms. *See generally Owen v. Owen,* 14 Va. App. 623, 419 S.E.2d 267 (1992). Upon review of this contract, entered into by competent adults for a valuable consideration, which clearly expresses the intent of the parties, and approved by the divorce chancellor, we cannot say that it is null and void on its face as held by the trial court. "Valid marital agreements are favored and will be enforced by divorce courts when incorporated in a decree which orders the parties to comply with its terms." *Doherty v. Doherty,* 9 Va. App. 97, 99, 383 S.E.2d 759, 760 (1989).

For the reasons stated, we reverse and remand this case to the trial court for further consideration consistent with this opinion.

*Reversed and remanded.*

Moon, C.J., Barrow, J., Duff, J.,* Willis, J., and Bray, J., concurred.

Coleman, J., with whom Koontz, J.,** joins, dissenting.

I respectfully disagree with the majority's holding that the *res judicata* bar of Rule 1:1 prevents appellate review of whether the divorce decree was void and unenforceable because it violated public policy. In my view, that part of the divorce decree that incorporated the covenant from the PSA requiring Marilyn Kelley to indemnify David Kelley for all child support he was required to pay and the related covenants absolving David Kelley of his duty to support his children and the wife's covenant not to sue him for child support are void, rather than voidable. Therefore, the validity of that part of the decree is unaffected by Rule 1:1. Accordingly, I dissent and would uphold the ruling of the trial judge that the indemnification provision in the decree is void.

Whether Rule 1:1 bars appellate review after twenty-one days of a decree incorporating a contract that violates public policy depends upon whether the underlying contract is void or whether it is merely voidable and unenforceable. The majority acknowledges that a *void judgment* may be attacked and vacated in any court at any time, directly or collaterally, without regard to the time limitation contained in Rule 1:1. *See Rook v. Rook,* 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987).[1] The Supreme Court

> said through the eminent Judge Burks: "It is conceded by all the authorities that if a judgment is void, it may be assailed anywhere, at any time, in any way, by anybody. It is immaterial whether the assault be direct or collateral. It is a nullity and may be treated as such."

---

*Judge Duff participated in the hearing and decision of this case prior to the effective date of his retirement on September 1, 1992, and thereafter by designation pursuant to Code § 17-116.01.

**When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.

[1] The panel in *Kelley v. Kelley,* 13 Va. App. 424, 412 S.E.2d 465 (1991), did not address whether Rule 1:1 bars review of the decree on this appeal because the parties did not raise the issue. Furthermore, since the panel concluded that the agreement and decree were void as against public policy, the panel did not deem that an issue necessary to be addressed. If, however, the majority is correct that the question of the validity of the judgment and contract is *res judicata,* they properly invoke the Rule 1:1 bar to give finality to a question that has been litigated.

*Broyhill v. Dawson,* 168 Va. 321, 326, 191 S.E. 779, 781 (1937). And when a judgment is based upon or incorporates a void contract, that part of the judgment is also void.

> A void contract is no contract at all; it binds no one and is a mere nullity. . . . If the contract . . . is void and a nullity by statute, it continues to be so once incorporated in the divorce decree with the result that the judgment as it pertains to such contract is also void. This is true because the trial court is without power or jurisdiction to render a judgment based upon a statutorily void contract.

*Isenhower v. Isenhower,* 666 P.2d 238, 241 (Okla. Ct. App. 1983) (footnote omitted).

> A thing that is null and void has no legal existence. It is lifeless. Life cannot be infused into it — being cannot be given to it — by a court order or *judgment.* The weakness of the [majority's reasoning] . . . comes of the fact that [they] fail[] to distinguish between a void judgment and a voidable one.

*Broyhill,* 168 Va. at 326, 191 S.E. at 781 (emphasis added). Thus, the dispositive questions are whether the underlying PSA was void, whether a divorce decree that incorporated the PSA was void, or whether it was merely voidable, thereby rendering it unenforceable only when subjected to direct attack.

The majority does not expressly address whether the covenants in the Kelley's PSA were void or voidable. The covenants purported to relieve the father, David Kelley, of his duty to support his children and to bind the mother not to sue him for child support and to indemnify him fully if she did. Whether the covenants are void or merely voidable is, in my opinion, a threshold determination that must be made. The majority suggests that the indemnification covenant between the Kelleys as incorporated in the decree is a separate, valid and enforceable provision. Relying upon the decision in *Rook v. Rook,* the majority implies that the provision absolving the father of the duty of support and the covenant not to sue were, at most, voidable and unenforceable. The majority concludes that "[t]his challenge to the agreement's validity could and should have been raised before the divorce decree was entered or within 21 days thereafter." *Rook,* 233 Va. at 95, 353 S.E.2d at 758.

In my view, the waiver and enforcement covenants, which I believe are void as against public policy, cannot be severed and considered separately from the indemnification provision. The sole purpose of the indemnification provision is, as are the other two, to relieve David Kelley of his duty to support his children and, thereby, effectively deprive the children of their statutory right to support from both parents by requiring the mother to indemnify him and bear the full burden of support. Moreover, even if the indemnification provision can be viewed as a separate and independent provision of the divorce decree, it is void as contrary to public policy because it effectively relieves one parent, in exchange for a bargain benefitting the mother, of his duty to support his children. To treat the indemnification provision in the divorce decree as though it is not part of the agreement to relieve the father of his duty of child support and the mother's covenant not to sue him is to sanction the basest form of legerdemain.

The majority relies primarily on the decision in *Rook v. Rook.* In my view, the majority misconstrues *Rook.* In *Rook,* the Court was presented with the following issues:

> Lisbeth's first assignment of error challenges the jurisdiction of the trial court to modify the divorce decree after it became final. Robert counters with alternative arguments. First, he argues that he did not attack the decree but only the property settlement agreement. Alternatively, he argues that even if his claim constituted an attack on the final decree, Code § 8.01-428(C) permits such a challenge.

*Id.* at 94, 353 S.E.2d at 757. The Court held that the husband could not after twenty-one days attack a divorce decree incorporating a PSA when the "sole contention is that the *agreement* is against public policy and therefore void." I do not read *Rook* to hold that *every* final judgment that incorporates or is based on an agreement that violates public policy is, after twenty-one days, valid and unassailable under Rule 1:1. In fact, *Rook* acknowledges that Rule 1:1 does not bar review of a void judgment. Rather, I understand *Rook* to hold that a challenge to a PSA on the ground that it is unenforceable because it encourages divorce and, for that reason, is against public policy must be raised before the agreement has been incorporated as part of a decree or challenged on direct appeal. In effect, *Rook* holds that a challenge to a PSA on these grounds raises a claim that the agreement is voidable rather than void and, therefore, can only be challenged by direct appeal.

*Rook* distinguishes, as does the majority, between a *void judgment* and a *contract* that is violative of public policy. In *Rook*, the appellant only raised a claim that the PSA was void and did not argue that the divorce decree was void. The majority has framed the issue in this case as being the same as in *Rook,* even though neither party raised the question. Unlike the issue in *Rook*, I believe that this Court must consider the question whether the divorce *decree* that incorporated the PSA provisions relieving the father of his child support obligation, and approving the mother's agreement not to sue for support or to indemnify the father, is void as against public policy as defined by the statute. Furthermore, while *Rook* includes a definition of void judgments, the definition is not exclusive. In addition to judgments or decrees procured by extrinsic or collateral fraud or those entered by a court lacking personal or subject matter jurisdiction, *Rook,* 233 Va. at 95, 353 S.E.2d at 758, a decree or judgment whose invalidity appears on its face or that is statutorily prohibited is also void and is not affected by the *res judicata* bar of Rule 1:1. *See, e.g.,* Code § 8.01-428; *Broyhill v. Dawson,* 168 Va. 321, 191 S.E. 779 (1937). Thus, because the indemnification provision and the provisions absolving the father of his duty of child support and the mother's agreement not to sue for child support violate the provisions of Code §§ 20-61, 20-107.2 and 20-108.2 requiring both parents to support their children, those provisions of the decree are null and void as against public policy.

In my view, it is unconscionable to uphold a provision in a divorce decree approving a mother's bargaining away her children's right to support from their father in exchange for her receiving the marital home, which the indemnification agreement sanctions. I am not unmindful that the father may well have bargained away a $40,000 asset to the mother in exchange for her agreement to indemnify him and that the children may have benefitted from her bargain. The record is silent on that account. The point is that a parent cannot enter an agreement that effectively bargains away her children's right to their other parent's support.

While the validity of a divorce decree incorporating a contract relieving a parent of child support with an indemnification covenant is a question of first impression in Virginia, other states that have confronted the issue have held that decrees that incorporate contracts of this nature may be collaterally attacked because they are void in violation of public policy or state statute. *See Huckaby v. Huckaby,* 393 N.E.2d 1256, 1259-60 (Ill. Ct. App. 1979) (judgment incorporating agreement absolving father of child support liability void as against

public policy despite lapse of time for attacking final judgment); *Richardson v. Richardson*, 427 So. 2d 518, 521 (La. Ct. App. 1983) (judgment incorporating agreement waiving child support "null and void as against public policy" despite lapse of time for attacking final judgment); *Isenhower*, 662 P.2d at 241 (judgment that incorporates a void contract also is void and unenforceable); *see also Calton v. Calton*, 485 So. 2d 309, 310 (Miss. 1986) (covenant not to sue for child support void as against public policy because "parents cannot contract away rights vested in minor children"); and *Miesen v. Frank*, 522 A.2d 85, 87-88 (Pa. Super. Ct. 1987) (indemnification for child support provision in separation agreement void as contrary to public policy). *But see Department of Health & Rehabilitative Servs. v. Morley*, 570 So. 2d 402, 404 (Fla. Dist. Ct. App. 1990).

Thus, we necessarily must decide whether the provisions in the divorce decree incorporated from the PSA are null and void in violation of the statutes and as against public policy. Both parents are legally required by statute to support and maintain their minor children. Code §§ 20-61, 20-107.2 and 20-108.2; *Commonwealth ex rel. Gray v. Johnson*, 7 Va. App. 614, 622, 376 S.E.2d 787, 791 (1989). From this duty emanates a legal right that "is solely that of the child" to seek child support. *Johnson*, 7 Va. App. at 622, 376 S.E.2d at 791. Consequently, a contractual agreement between husband and wife in violation of the statute is illegal and in violation of the stated policy of the Commonwealth.

The trial court, although it previously approved the covenants and gave them the force of its decree, subsequently recognized its residual authority to order the father to support his children and to disregard the covenants not to sue and absolving the father of his duty to support. Just as the trial court was empowered to disregard and hold void and unenforceable those provisions incorporated in the covenant not to sue, the trial court was, for the same reason, empowered to disregard the indemnification provision because it was void. The indemnification covenant is simply another means of allowing David Kelley to escape his legal duty to support his children by insuring that any child support payments he might make "would end up back in his own pocket." *Miesen*, 522 A.2d at 88. I would uphold the trial court's ruling that the decree approving the agreement for the mother to indemnify the father for child support he is required to pay is null and void as contrary to public policy.

Elder, J. with whom Benton, J., joins, dissenting.

I concur with the dissent by Judge Coleman that the agreement, as written, is contrary to public policy and, as such, is not subject to the bar of Rule 1:1. However, in order to allow the trial court to make a determination as to the feasibility of restoring the *status quo ante*, I would remand.

The record reflects that the trial court incorporated the agreement into the final divorce decree. Five years later, wife sought child support. The court awarded support, which husband agreed the court had a right to do. Husband sought indemnification pursuant to the agreement, and the trial court found that the agreement violated public policy. Principles of *res judicata* may well bar further attempts to recover.

The agreement in question did not purport to preclude the court from exercising its power to order child support; it merely required indemnification of amounts paid. Indeed, a contract between a husband and wife cannot prevent the court from exercising its power relative to child support. *Featherstone v. Brooks,* 220 Va. 443, 446, 258 S.E.2d 513, 515 (1979). The agreement before us, however, presents an issue of first impression in Virginia. While I agree, for reasons stated in Judge Coleman's dissent, that this type of agreement is violative of public policy, I do not agree that the general principle of allowing no recovery under contracts violating public policy should apply to this agreement. *See Phillip Levy & Co. v. Davis,* 115 Va. 814, 80 S.E. 791 (1914). There are exceptions to the general rule that allow no recovery under contracts deemed illegal or violative of public policy. Where the parties to an illegal contract are not *in pari delicto,* or where public policy would be promoted, courts of equity can and should grant relief. *Waller v. Eanes,* 156 Va. 389, 394, 157 S.E. 721, 723 (1931).

In the case at bar, husband testified that the provision regarding child support was placed in the agreement at wife's request or suggestion. Although wife denied that the provision was included at her request, oral argument established that the funds were used by her to purchase a new home. These facts lend credibility to husband's assertion that the parties are not equally at fault and that husband should have relief.

Public policy favors the prompt resolution of disputes concerning the maintenance of minor children. *Morris v. Morris,* 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975). To disallow recovery under this

agreement would discourage rather than encourage resolution of child support disputes.

By having the agreement incorporated into the final divorce decree, the parties asked the trial court to deal with all issues contained therein. The trial court is in a unique position to resolve these issues equitably. Both parties abided by the agreement for over five years. During that period wife had use of husband's $40,500, and husband paid no child support. But for the agreement, husband clearly would have paid child support. Wife may be unjustly enriched, however, if she is allowed to keep the $40,500 without an adjustment and receive child support.

For the reasons stated, I would remand to allow the trial court to determine what amount of child support the husband would have paid from the date of the agreement and what refund, if any, husband is entitled to receive from the $40,500 paid to wife in consideration of this void agreement.