## CIRCUIT COURT OF BEDFORD COUNTY

Barbara A. Baldwin

v.

Edwin Frederick Baldwin

April 23, 1999

Case No. CH 97018455-01

BY JUDGE JAMES W. UPDIKE, JR.

The captioned matter came to be heard on April 9, 1999, upon reinstatement on the docket of this court, and upon the rule to show cause, issued upon the verified petition of plaintiff, Barbara A. Baldwin (wife), requiring defendant, Edwin Frederick Baldwin (husband), to show cause why he should not be held in contempt of this court's final decree of divorce.

The evidence and the record of this case established that the parties were married on October 13, 1995, and that they separated on or about February 27, 1997.

The parties entered into a mediation settlement agreement on January 14, 1998, and upon due notice to wife, depositions were taken of husband and his corroborating witness on April 16, 1998. During husband's deposition, the following colloquy occurred:

> Q. Did you and the complainant enter into a handwritten settlement agreement on January 14, 1998, which is attached to these depositions as Exhibit A?

A. Yes.

Q. Are you asking the court to ratify, affirm, and incorporate the said settlement agreement dated January 14, 1998, into the final decree of divorce?

A. Yes.

Depositions, 4/16/98, page 3.

Upon the request of husband's counsel, a final decree of divorce was entered on June 12, 1998. This decree was endorsed "seen and agreed" by counsel for wife, and as to the mediation settlement agreement, the decree stated:

> The parties entered into a mediation settlement agreement dated January 14, 1998, executed by both parties, undertaking to adjust the marital and property rights of the parties, which agreement is attached to the Depositions as Exhibit A and request that said agreement be affirmed, ratified, and incorporated into this Decree pursuant to the provisions of § 20-109.1 of the Code of Virginia, as amended ....
>
> It is further adjudged, ordered, and decreed and the Court doth ratify, confirm, approve, and incorporate into this Decree by reference thereto as Exhibit A, the handwritten mediation agreement between the parties dated January 14, 1998.

Order 6/12/98, page 2.

During the hearing of April 9, 1999, wife argued, by counsel, that husband should be held in contempt for failure to comply with paragraph 9 of the mediation agreement, which states:

> Fred will have all items listed on the attached schedule belonging to Barbara prior to marriage moved to her residence in Myrtle Beach, S.C., on or before March 1, 1998. This includes items belonging to Ryan Montgomery.

Mediation Agreement, 1/14/98, page 2.

Wife testified that she did not receive from husband numerous items listed on the attachment to the handwritten mediation agreement, and she separately

listed these items on plaintiff's exhibit 2. Therefore, wife argued, husband should be held in civil contempt of court.

In response, husband argued, in the first instance, that the sanction of contempt may not be used to enforce the divorce decree in this case because the final decree did not expressly order the parties to comply with the terms of the incorporated mediation agreement. As authority, husband cited *Doherty v. Doherty*, 9 Va. App. 97 (1989), and *Kelley v. Kelley*, 17 Va. App. 93 (1993).

In *Doherty*, the Court of Appeal of Virginia stated:

> In several Virginia cases a distinction has been made between marital agreements "approved" in the decree and those which have been incorporated in the decree by reference where the parties have been ordered to comply with its terms. Without the order to comply, the sanction for contempt is not available and the remedy for non-compliance with the contract is by assumpsit in an action at law.

9 Va. App. at 99.

Before addressing *Doherty*, I feel it important to state once again that the mediation settlement agreement dated January 14, 1998, was ratified, confirmed, approved, and incorporated by reference into the final decree of divorce upon the request of husband, by counsel, and with the consent of wife, by counsel, pursuant to § 20-109.1 of the Code of Virginia. This court has therefore ruled the mediation settlement agreement to be a valid agreement between the parties, and this court will not now alter that ruling.

Secondly, I feel it important to review § 20-109.1 of the Code of Virginia, which provides in pertinent part:

> Any court may affirm, ratify, and incorporate by reference in its decree dissolving a marriage ... any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody, and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. Where the court affirms, ratifies, and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.

Section 20-109.1 of the Code of Virginia.

In my opinion, § 20-109.1 clearly authorizes this court under the circumstances of this case to enforce the final decree of divorce, including the terms of the incorporated mediation agreement, through its contempt power. Indeed, the Court of Appeals has stated the effect of § 20-109.1, and the inherent authority of a divorce court existing prior to the enactment of § 20-109.1, as follows:

> First, Code Section 20-109.1 was not intended to alter the divorce court's power that existed prior to the statute's enactment to incorporate settlement agreements into its decrees. Before Code Section 20-109.1 was enacted in 1970, a divorce court had an "incidental authority to approve bona fide and valid agreements between the parties for the settlement of property rights and claims for [support]." *Barnes*, 144 Va. at 710, 714, 130 S.E. at 907, 909 (holding that a trial court has a right to set forth in its decrees a settlement agreement entered between the parties in a divorce proceeding). This incidental authority of a divorce court extended to the enforcement of the agreement through its contempt power if the court had incorporated the terms of the settlement agreement instead of merely ratifying them. See *Gloth v. Gloth*, 154 Va. 511, 548, 153 S.E. 879, 891 (1930) (stating that a trial court has jurisdiction in a divorce suit to enforce the terms of a settlement agreement when it incorporates them in its decree); see also *Casilear v. Casilear*, 168 Va. 46, 55, 190 S.E. 314, 318 (1937) (stating that a trial court retains jurisdiction after a final decree of divorce to enforce agreements between the parties); *McLoughlin v. McLoughlin*, 211 Va. 365, 368, 177 S.E.2d 781, 783 (1970) (stating that prior to the enactment of Code Section 20-109.1, the incorporation of a settlement agreement "meant the court could use its contempt power to enforce the agreement"). Soon after the enactment of Code Section 20-109.1, the Virginia Supreme Court stated that this statute merely codified the preexisting power of a divorce court to incorporate a settlement agreement in a decree and to enforce it through its contempt power. See *McLoughlin*, 211 Va. at 368, n. 1, 177 S.E.2d at 783, n. 1.

*Rogers v. Damron*, 23 Va. App. 708, 713-14 (1997).

Though I have now read several cases that cite *Doherty* with approval, when attempting to discern the precise meaning of *Doherty*, I found guidance in the unpublished opinion in *Stevenson v. Stevenson*, 98 Vap Unp 2285974 (decided 4/28/98). I concede that I have never been certain of the precedential

effect of unpublished opinions, but I found *Stevenson* to be very interesting because it was decided by a three judge panel that included Judge Joseph E. Baker, and it was Judge Baker who wrote the opinion in *Doherty*. Moreover, *Stevenson* is an appeal of a decision of a circuit court finding a husband to be in contempt for failure to comply with a final decree of divorce that ratified and incorporated a property settlement agreement, and *Doherty* is cited as authority for the following:

> The final decree ratified and incorporated, but did not merge, the parties' marital agreement. The agreement remained an extant contract enforceable under either contract law or through the court's contempt power. See generally *Doherty v. Doherty*, 9 Va. App. 97, 99, 383 S.E.2d 759, 760 (1989).

*Stevenson v. Stevenson*, 98 Vap Unp 2285974 (decided 4/28/98).

Though not necessary for the determination of this case, because of the discussion I had with counsel at the conclusion of the hearing of April 9, 1999, I will state my present understanding of the use of the words "affirm," "merge," and "incorporate" in a final decree of divorce. If a decree merely affirms a property settlement agreement, a party seeking enforcement must enforce the contract. If a decree affirms, incorporates, and merges a property settlement agreement, enforcement must be through enforcement of the decree. If a decree ratifies, affirms, and incorporates a property settlement agreement, but does not merge the agreement, a party seeking enforcement may enforce either the decree or the contract, and if enforcement is through the decree, the court's power of contempt is available. Finally, depending upon the circumstances and nature of the agreement, any distinction between use of the phrase "incorporates by reference" and use of that phrase with an order directing the parties to comply may be a distinction without meaning.

I, therefore, rule that the final decree of divorce in this case, including the terms of the incorporated and mediation agreement, can be enforced through this court's power of contempt.

Husband also argued that he cannot be held in contempt because he believes paragraph 9 of the mediation settlement agreement directed him to return to wife only those items "belonging to Barbara prior to marriage." Husband argued further that he has complied with the agreement, and if not, he cannot be held in contempt of an order that did not clearly impose an expressed obligation upon him.

I certainly agree with husband that a party cannot be found in contempt for failing to perform an obligation unless he was clearly informed of that obligation. In this regard, the Court of Appeals has stated:

> "[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied."
>
> If the actions of the alleged contemnor do not violate a clearly defined duty imposed upon him or her by a court's decree, the alleged contemnor's actions do not constitute contempt.

*Wilson v. Collins*, 27 Va. App. 411, 424 (1998), quoting *Winn v. Winn*, 218 Va. 8, 10-11, 235 S.E.2d 307, 309 (1977).

When examining the terms of the mediation settlement agreement, it is clear that the agreement incorporates by reference an attached schedule that was introduced as plaintiff's exhibit 1. At the top of this schedule, the following is stated: "Items Belonging to Barbara Prior to Marriage (Also Ryan's Belongings)." Therefore, it is my opinion that the phrase "belonging to Barbara prior to marriage" found in paragraph 9 of the mediation settlement agreement is clearly a phrase of description and identification, not a phrase of qualification and limitation. By requesting in his deposition, and in the decree he prepared and presented to the court, that this mediation settlement agreement be affirmed, ratified, and incorporated by reference into the final decree of divorce, husband agreed that the items listed on the schedule (plaintiff's exhibit 1) belonged to wife and Ryan. As stated in *Doherty*, husband "may not go behind the judgment of the court" and argue that which is clearly inconsistent with what he himself requested be incorporated into the divorce decree. 9 Va. App. at 99.

I will now address the factual issues of this case. Husband testified that in February of 1998, he and several friends loaded onto a trailer items listed on the schedule attached to the mediation settlement agreement (plaintiff's exhibit 1). These friends also testified that everything that was listed on the schedule and that they could find in the former marital residence was loaded onto the trailer. Husband then delivered these items to wife in Myrtle Beach.

Wife admitted receiving a number of the items listed on the schedule, but she alleged that many of these items, as shown on plaintiff's exhibit 2, were not returned to her. Essentially, both parties maintained that they do not know where the missing items are.

Again stated, I find it crucial to my determination of this case that husband agreed that the items listed on the schedule belonged to wife and Ryan and that he would return these items to wife in Myrtle Beach. He cannot now alter this agreement or the divorce decree that incorporated it. The only remaining issue is whether he delivered these items as he agreed.

The evidence from husband's witnesses was persuasive to the extent that all items listed on the schedule and found in the house were loaded on the trailer. However, this evidence did not resolve the question of whether any of the items on the list had been removed before their arrival, by either husband, wife, or someone else.

Wife testified that husband told her that she was not getting any more property than that delivered in February of 1998. I find this testimony to be corroborated by certain admissions made by husband during his testimony. Husband admitted that he did not deliver to wife certain items listed on the schedule, including a motorcycle and items located at the business office and at Wexford Townhouses. According to husband, these items did not belong to wife or Ryan; however, notwithstanding any issue of actual ownership of these items, these assertions by husband are contrary to the incorporated agreement. Moreover, as argued by wife, these admissions by husband indicate casual compliance with the agreement and a willingness to depart from its expressed terms.

I am also troubled by husband's testimony that he did not know what happened to certain items in the house. In my opinion, husband would know whether he personally removed such items from the house or noted their sudden disappearance if removed by someone else. For example, husband testified that he did not know what happened to Ryan's weight bench and weights, which are clearly shown in the pictures introduced by wife. In my opinion, the removal of items of such weight and size by husband personally or their sudden disappearance upon removal by someone else would engender a memorable impression.

I, therefore, find husband to be in indirect civil contempt of this court for his failure to comply with paragraph 9 of the mediation settlement agreement, as ratified, confirmed, approved, and incorporated by reference into the decree entered June 12, 1998.

As to the value of the items that were not returned to wife, I have analyzed the valuations of husband (defendant's exhibit C), wife (plaintiff's exhibit 2), and Mr. Spiggle (defendant's exhibit B). Upon my application of common sense and ordinary experience, I find the valuations of Mr. Spiggle (defendant's exhibit B) to be the best evidence.

I, therefore, order husband to pay wife a fine in the amount of $4,345.00 within sixty days of entry of the order incorporating this opinion. Husband may purge himself of this civil contempt by delivering to wife in Myrtle Beach, South Carolina, the items listed on plaintiff's exhibit 2 within the stated sixty day period. For any item returned to wife, husband will receive a credit toward satisfaction of the fine in the amount indicated on Mr. Spiggle's valuation (defendant's exhibit B) as the value of such item.

I further order husband to pay wife $1,000.00 for her attorney's fees and costs within sixty days of entry of the order incorporating this opinion.